JAMES TEBBS ET AL, Appellants, v. T. J. JARVIS, as Execu-
    tor of the Last Will and Testament of SARAH A. TEBBS,
    Deceased et al.

Agreement to will property: ENFORCEMENT. Possibly a legatee,
1   who, by a false promise to convey or will a portion of the
    bequest to another, induces the testator to give him property
    which but for the promise he would have given directly to the
    other, may be required to perform the agreement; but in the
    instant case the evidence fails to establish such a promise.

Evidence: COMMUNICATIONS WITH A DECEDENT. Evidence reviewed
2   and held to show that plaintiff claiming an interest in testator's
    estate by virtue of an agreement with his legatee to will the
    same to him, was disqualified as a witness to testify regarding
    the claimed agreement.

*Appeal from Lee District Court.*— HON. HENRY BANK,
JR., Judge.

TUESDAY, JUNE 9, 1908.

REHEARING DENIED TUESDAY, SEPTEMBER 29, 1908.

JAMES TEBBS died testate August 9, 1899, without is-
ue, leaving him surviving his widow, Sarah A. Tebbs, to
whom he left all his property, " the same to be hers absolutely
in fee simple to be owned and disposed of by her as she
pleases without let or hindrance," with a second clause in
words following: " If it should be that my brother Joseph
Tebbs shall become needy and in destitute circumstances, it
is my wish and request that my said wife shall furnish nec-
essaries and support as in her judgment he may need." The
widow, Sarah A., died testate November 12, 1905, and in
her will left the entire estate to be distributed to her rela-
tives, save $1,000, which was to be divided between two
daughters of Joseph Tebbs, an only brother of her deceased

husband, who had departed life since his death. The plaintiffs are children and grandchildren of Joseph, and in this action allege that Sarah A. Tebbs, fraudulently, to induce her husband to will his entire estate to her, agreed to will and devise or convey during her lifetime two-thirds thereof to his brother, Joseph, or his heirs, and that in violation of her agreement she executed a will as above stated, and they pray that the defendant Jarvis, executor of her will, be required specifically to perform the agreement of the testatrix, by transferring two-thirds of the estate to these plaintiffs. Upon hearing, the court dismissed the petition. The plaintiffs appeal.— *Affirmed.*

*John L. Benbow* and *D. F. Miller,* for appellants.

*Herminghausen & Herminghausen, J. J. Seerley,* and *Hamilton & Frailey,* for appellees.

LADD, C. J.— The testatrix, as authorized by words precatory in the will of her deceased husband, under which she acquired the property in controversy, devised and bequeathed it to her relatives, save a small part, which she left to two of his nieces. The plaintiffs, who are the heirs of her husband's only brother, claim two-thirds of the property, on the ground that she procured the execution of the will, leaving all her husband's estate to her, by promising him that she would give the brother Joseph Tebbs, or his heirs, by will or other conveyance, the portion of the property which would have gone to him or them but for said will. If by false promise she induced her deceased spouse to give property to her which, but for such promise, he would have given directly to the beneficiaries, and if she promised to will or convey it to him or to others, and she did not carry out her agreement, it would seem that equity should interfere, not for the purpose of reforming her will, but of compelling the performance of

1. AGREEMENT TO WILL PROPERTY: enforcement.

/

her obligations. *Moran v. Moran,* 104 Iowa, 216; *Carmichael v. Carmichael,* 72 Mich. 76 (40 N. W. 176, 1 L. R. A. 596, 16 Am. St. Rep. 528); *Wainwright v. Talcott,* 60 Conn. 43 (22 Atl. 485).

If this be conceded, however, the evidence fails to establish any such promise. Other than the testimony of James Tebbs, a son of Joseph Tebbs, there was no evidence tending to show that testatrix ever obligated herself in any way. Several had heard the testator say that the property came through the Tebbses, and should go back to the Tebbs' heirs, that he would not deed it in his lifetime, and that his wife would do as she had agreed. But none, save James Tebbs, were aware of what she had agreed to, or that she had ever agreed to anything, and he was incompetent to speak on the subject, owing to the prohibition of section 4604 of the Code. He was asked if he had heard a conversation between testatrix and her husband on the way home from Ft. Madison, in which he took no part, and answered in the affirmative, and then proceeded, in response to questions, to relate a conversation in which he did participate. " Q. How did it [conversation] happen to commence? A. My uncle had sort of coughing spells at that time, and was hawking and spitting, and he did not eat anything lately, and through it all he was complaining that there did not seem to be anybody to take care of him, or something of that kind, and I said that I would come and see that he was taken care of, if he wanted me to. Q. What did he say, and what did you say further? A. He said, if you do, I have made my will, I have willed it to Sarah for her life, or willed it to Sarah, and she is to will my half of it or my share of it back to you children. Q. State what she said in response thereto. A. She said, ' Yes, that was the agreement.' " He did not go to live with them as testatrix thought they would try to get along without him. What the uncle said was in response to the tender of services of the witness, and the wife's statement was a mere assent to what her husband had

2. EVIDENCE: communications with a decedent.

said, intended for the witness rather than her husband, or else in making it she joined in the conversation then being carried on between her husband and the witness. The latter was a party to the suit, and the section of the Code alluded to declares that "no party thereto shall be examined as a witness in regard to any personal transaction or communication between such witnesses and a person at the commencement of such examination deceased" against the executor.

"Communication" is defined by Webster's Dictionary as, "that which is communicated or imparted; intelligence; news; a verbal or written message." The testatrix joined her husband in communicating what had been done to the witness, and the latter was incompetent, by reason of the statute, to testify to what was said to him. Certainly these people were not reviewing these matters, which had transpired fourteen years previous, if at all, for their own edification, but were conveying an account of them to this nephew, who had escorted his aunt through the penitentiary, and had graciously offered to assist in their care in their enfeebled old age. True, the witness insists that he did not participate in the conversation after his offer; but this does not obviate the deduction from the circumstances and the language employed that the communications of both were to the witness rather than between themselves. Even if it might be inferred otherwise, the conclusion, as stated, might reasonably have been reached by the district court, and, as we think, was warranted. This being so, the witness was incompetent, and the evidence quoted rightly stricken from the record. With this out the allegations of the petition were without support. —*Affirmed.*