John McBride, Thos. McBride and Mary Steil, Appellees, v. Patrick McBride, Appellant, and James McBride, Annie Goddard, Julia McBride, Belle McBride, Ann McBride and Ella Goddard, Appellees.

**Continuance:** ABSENT WITNESS. After a cause had been set for trial by agreement, a motion for continuance filed on the eve of the trial because of the inability of an aged witness suffering from· *senile dementia* to be present, whose recovery and ability· to attend at a future term was not shown to be probable, was properly overruled; especially as it was admitted that she would testify to the matters stated in the application· if present.

**Evidence:** CONVERSATION WITH A DECEDENT: MOTION TO STRIKE. In an action to set aside the probate of a will on the· ground of mental incapacity, a party plaintiff and heir may testify to a conversation of the testator with others, in which the witness took no part, without violating the provisions of Code, section 4604; and even though parts of the conversation may be objectionable, a motion to strike at the close of the testimony, which is the only objection made and which fails to point out the objectionable parts, should be overruled.

**Same:** Where conversations of a testator are received in a proceeding to set aside his will, merely for the purpose of showing his mental condition, and not with a view to establishing any promise or admission of deceased, the fact that the witnesses detailing the same are permitted at times to overstep the rule forbidding a witness to testify in his own behalf to conversations with a decedent, in which he took part, did not add to the significance of the testimony and was not prejudicial error.

**Evidence:** MENTAL CAPACITY. Where a witness saw a testator often both before and after a certain date, and her testimony as to the mental condition of testator covered the time in a general way, it was proper for her to give her opinion as to his condition on or about such a date; the fair inference being that it applied to a time when she did see him rather than to a time when she did not see the testator.

**Will contest:** IMPROPER CROSS-EXAMINATION: REPETITION OF QUES-

tion  In the contest of a will giving to the wife and one son the entire estate, the repeated inquiry in slightly varying form on the cross-examination of the son, as to whether in testifying to the testators sanity he took into consideration the obligation his father was under to the other children when he made the will is not approved nor the ruling permitting the same commended; but in view of the fact that from the evidence on the whole case a different verdict could not properly have been rendered, a reversal is not ordered.

**Same:** INSTRUCTIONS: INADVERTENT ERROR: PREJUDICE. In this action involving a contest of the will of *James* McBride on the ground of mental incapacity, the court in stating the issue inadvertently referred to the testator as *John* McBride, but the error is held not to have been misleading, although a witness by that name was examined upon the trial, but whose mental soundness was not questioned, or that of any other person except the testator.

**Same:** DECLARATIONS OF TESTATOR. Where the only proven declaration of testator as to how he intended to dispose of his property was that he was going to give the land to his sons and the money to his daughters, a requested instruction that his declarations as to how he intended to dispose of his property were admitted as evidence of his mental condition and not as evidence of the truth or falsity of the facts stated, was properly refused; as the declaration involved no statement of facts.

**Same:** Where it was the theory of plaintiffs in an action to set aside a will that the facts involved in the declarations of testator were false and that therefore the testator was under a delusion, failure to instruct that the declarations should not be considered as evidence of the truth or falsity of the facts involved could not have been prejudicial to defendants.

**Same.** Where defendants offered evidence to the effect that at the time of making his will the testator stated he had given the other children their share of the property, failure of the court to limit its purpose to its bearing upon his mental condition was not a matter of which they could complain, although plaintiffs might properly have made such request.

*Appeal from Palo Alto District Court.*—Hon. W. B. Quarton, Judge.

Thursday, April 8, 1909.

THIS is an original action to set aside the probate of a will. There ·was a verdict and judgment against the validity of the will, and the probate thereof was set aside. The defendant Patrick McBride appeals.—*Affirmed.*

*Thos. O'Connor* and *Soper, Morse & Soper,* for appellant.

*E. A. Morling* and *Davidson & Burt,* for appellees.

EVANS, C. J.—James McBride, late of Palo Alto County, died March 25, 1901, leaving surviving him Ann McBride, as widow, and the other defendants and plaintiffs in this action, his children. The latter are also children of Ann McBride. In July, 1901, an instrument, bearing date February 16, 1901, and purporting to be the last will and testament of said James McBride, was admitted to probate after notice by publication. This action was brought to set aside such order of probate. The ground alleged is a want of mental capacity on the part of James McBride to make a will.

I. After the opening of the term at which the case was noticed for trial, and after a day had been fixed by the court for the trial with the consent of the attorneys on both sides, the defendants moved for a continuance of the case over the term, for the reason that the health of the defendant Ann McBride would not permit of her attendance as a witness. The motion was overruled, and the appellant complains of such ruling. The record discloses that the motion was not filed until the eve of the trial. The only excuse offered for the delay in filing the motion was that defendant Patrick McBride had neglected to advise his attorneys of the condition of his mother's health. The evidence taken on the motion made it appear that Mrs. McBride was an aged lady, and that she was suffering from

1. CONTINUANCE: absent witness.

*senile. dementia.*   Her attending physician testified that she was not in a mental condition to appear and give testimony, and he stated to the court: "I can give no assurance that she will be better mentally." Moreover, counsel for plaintiffs offered to admit that Mrs. McBride, if present, would testify to the matters stated in the application. Mrs. McBride had been in the condition described for three months prior to the term of court. The trial court, therefore, properly overruled the application for a continuance.

II.   Many rulings on evidence are complained of. We shall notice only such thereof as are discussed in argument. Mary Steil, one of the plaintiffs, was called as a witness on behalf of plaintiffs. On the

2. EVIDENCE: conversations with a decedent: motion to strike.

issue of mental incapacity she was asked: "Q. Did you hear your father say anything in conversation, in which you did not take part, in reference to his [land] corners? A. Yes; he said about them moving his corner stakes; that he thought his neighbors had all joined, and could move his corner stakes. Q. Did he say how they did it?" An objection to the competency of the witness being overruled, she answered: "A. By witchery." The objection to the question was predicated on Code, section 4604. The question objected to had relation back to the former question, and guardedly called for a conversation overheard by the witness. *Erusha v. Tomash,* 98 Iowa, 510; *Mallow v. Walker,* 115 Iowa, 238; *Powers v. Crandall,* 136 Iowa, 659. Counsel for defendant was then permitted to examine the witness as to her competency, and she answered: "I am not testifying to what my father told me, just what I heard him say. Q. Were the conversations you have referred to had between you and your father? A. Well, he was talking to all the family there, whoever were there." Counsel for plaintiff then resumed: "Q. I am asking you for conversations and statements of your father

not addressed to you, and in which you did not take part."
To this question the same objection was interposed and
overruled. There was no error in this ruling. It would
have been quite proper for the court to instruct the wit-
ness respecting the limits to which she should confine
herself in answer. This, however, was not requested by
either party. The question itself was a proper one. Other
questions relating to other occasions, and similarly guarded,
followed, and the same objection was interposed to each
and overruled. So, also, the other parties plaintiff were
called as witnesses, and in like manner interrogated, and
permitted to answer over the objections of the defendant.
What we have already said is applicable to the several con-
tentions for error arising therefrom.

It should be said, however, that some of the answers
of some of these witnesses occasionally went beyond the
question, and they testified to statements of the deceased
which were addressed to themselves. These statements had
no proper place in the record, and the defendant was en-
titled to their elimination. His motion to strike, however,
was usually made at the close of the testimony of the wit-
ness, and was broad and sweeping in character, and did
not point out the particular evidence objected to.

There is the further consideration that the witnesses
were being examined on the question of the mental ca-
pacity of the testator, and the general purport and purpose
of their testimony was to describe the con-
3. Same.          duct of the testator as they observed it, in-
cluding his acts and words, and as bearing upon his mental
condition. It appears from the testimony that the tes-
tator talked much to himself. He asked questions, and
answered them himself. The whole trend of the testimony
as to the conversations of the testator was for the purpose
of depicting therefrom his mental condition. The fact
that the witnesses sometimes overstepped the line, and
that some of the conversations testified to appear to have

been addressed to them, did not add anything to the significance of the testimony for the purpose for which it was given and received, and no prejudice could result therefrom. If the objectionable testimony involved an alleged promise or admission of the deceased, liability for which was attempted to be charged against his estate, a different situation would be presented so far as the question of prejudice is concerned. We think, therefore, that whatever technical errors occurred in the testimony of these witnesses along this line, they were clearly non-prejudicial, and would not justify us in reversing the case.

III. As the direct examination of plaintiff Mary Steil drew to a close, she was asked to give her opinion based upon the facts testified to by her as to the mental condition of her father on or about February 16, 1901. This question was objected to, on the ground that the witness did not see the testator on February 16, 1901, and was therefore not competent to give an opinion as to his mental unsoundness on that date. It is doubtless true that a nonexpert witness is competent to give his opinion as to the mental unsoundness of the testator only at the time of the observation to which he has testified. *Blake v. Rourke,* 74 Iowa, 519. Inferences as to the mental unsoundness of the testator at some prior or subsequent date are usually to be drawn by the jury, and not by the nonexpert witness. The rule of evidence is somewhat broader as applied to a nonexpert opinion offered in support of mental soundness than as applied to such opinion offered to prove mental unsoundness. *Hull v. Hull,* 117 Iowa, 746. In the case at bar, however, the witness saw her father frequently, both before and after February 16th, and her testimony covered such period in a general way. The witness could have stated her opinion of the mental condition of her father at each of the times concerning which she testified. This would have resulted in much repetition. We think that

4. EVIDENCE: mental capacity.

it was proper, under these circumstances, to permit counsel to select an approximate time and direct the witness' attention to it and permit her to state her opinion as to the mental condition in regard to that time. The fair inference to be drawn from the question and the answer was that it applied, not to a time when she did not see him, but to some time when she did see him. What is here said is also decisive of several like objections urged against similar testimony of other witnesses.

IV. Seventy-five specific errors are alleged and argued, and nearly all of them relate to questions of evidence. We can not discuss them all without unduly extending this opinion. What we have already said in the foregoing divisions is decisive of the larger part of them. We have given careful consideration to all others, and reach the conclusion that no error appears in this part of the record which would justify a reversal.

The most serious question presented for our consideration relates to the cross-examination of the defendant Patrick McBride. It is urged that the cross-examination was improper, and that the trial court abused its discretion in permitting it. The will in question gave all the property to this witness and to the mother. The following questions will indicate the trend of the cross-examination complained of as improper: "Q. In saying that he is not insane you don't consider the question at all of what obligation your father was under to your brothers and sisters, do you? Q. You don't take into consideration at all, or don't consider the question whether your father, when he made the will, was under any moral or legal obligation to your brothers and sisters or not? Q. In saying to the jury that you thought your father was of sound mind you never considered the question, or took into account the question, whether your father, when he made the will, was under any obligation to your brothers and sisters, did

5. WILL CONTEST: improper cross-examination: repetition of question.

you?" This question was propounded, in slightly varying forms, twenty-five times, the defendant persistently objecting to each one, and the court overruling the objections. We can not approve this cross-examination nor commend the rulings of the trial court, even though they were within the limits of its judicial discretion. Were it not for the state of the evidence as a whole, we might deem it our duty to order a new trial because of the impropriety of this cross-examination. We have, however, given much consideration to the voluminous testimony. It preponderates so heavily in favor of the plaintiffs that the jury could not properly have rendered any other verdict than they did. We do not mean by this that a contrary result would have no support in the evidence, but it would have been clearly against the great weight of the evidence. Under these circumstances we think we should interfere reluctantly with the discretion of the trial court in the latitude of cross-examination permitted.

V. The court gave instruction No. 2 as follows: "The purpose of this trial is to determine whether or not the will of James McBride is, and was at the time of its execution, a valid one; that is to say, whether the will was, and is, invalid because, at the time of the execution of the same, John McBride was of unsound mind." The defendant challenges this instruction because of the name "John," instead of "James," in the second reference to the testator in this instruction. This was so manifestly a slip of the pen that it could mislead no one as to what was intended. Appellant argues that the name of one of the witnesses was John McBride, and that the jury might have understood the reference to be to such witness. But there was no testimony challenging the mental soundness of John McBride, nor that of any other person except the testator. There could therefore be no misunderstanding on the part of the jury as to what was intended. And if there had

6. SAME: instructions: inadvertent error: prejudice.

been a misunderstanding in that respect, and if the jury had deemed it necessary to find John McBride to be mentally unsound in order to invalidate the will, such misunderstanding would have been prejudicial to the plaintiffs, and not to the defendant. We find no merit, therefore, in this contention.

VI. The defendant requested the following instruction, which the court refused: "The jury is further instructed that the testimony of witnesses, giving declarations of James McBride as to how he intended to dispose of his property, are admitted as external manifestations of James McBride's mental capacity, and not as evidence of the truth or falsity of the facts he stated." An instruction to the effect that the testimony of witnesses, giving declarations of James McBride, is admitted as external manifestations of his mental capacity, and not as evidence of the truth or falsity of the facts he stated, would have been entirely proper. But the instruction proposed by defendant confined its reference to those declarations of testator "as to how he intended to dispose of his property." The only declarations in the record on that subject are that he was going to give the land to the boys and the money to the girls. No statement of facts was involved in that declaration. The instruction, therefore, in the form in which defendant presented it could subserve no proper purpose.

7. Same: declarations of testator.

Many declarations of the testator were shown which involved a statement of facts. The purpose of showing those declarations was to prove that the testator suffered from many delusions. It was testified, on behalf of plaintiffs, that he said Julia poisoned his medicine; that his neighbors and the witches made his cattle sick; that they sowed burs in his field; that they changed his corner stakes; that a certain patch of grass was poisoned, and declarations of like nature. The very theory of plaintiffs' case was that the facts stated

8. Same

178            Bᴀɴᴋ v. Gɪʟɪɴsᴋʏ.       [142 Iowa

were false, and that therefore the testator was laboring
under a delusion. A failure, on the part of the court,
to instruct the jury that the testator's declarations as to
these matters should not be deemed as evidence of the
truth of the facts surely could not have prejudiced the
defendant. If the facts were true, then there was no
delusion. So far, therefore, as any declarations put in
evidence by the plaintiffs are concerned, the defendant
could not be prejudiced by the failure of the court to give
an instruction on the subject asked.

On behalf of the defendant certain declarations were
testified to to the effect that, at the time the testator made
the will in question, he said that he had given the other

9. Sᴀᴍᴇ.    children their share. The plaintiffs might
well have asked that the effect of this evi-
dence be limited in the manner indicated by the proposed
instruction, but the defendant has no ground to complain
by reason thereof. Defendant's claim of error at this point
can not therefore be sustained. The instructions actually
given by the court covered the case with great care, and
singled out the issue to be determined, and submitted the
same with eminent fairness to both parties. No complaint
is urged here against any of the instructions so given. We
find no prejudicial error in the record.

The judgment of the court below must be *affirmed.*

---

Tʜᴇ Cᴏᴍᴍᴇʀᴄɪᴀʟ Nᴀᴛɪᴏɴᴀʟ Bᴀɴᴋ ᴏꜰ Cᴏᴜɴᴄɪʟ Bʟᴜꜰꜰs,
Iᴀ., Appellant, v. B. Gɪʟɪɴsᴋʏ.

**Corporations:** ɴᴏᴛɪᴄᴇ ᴏꜰ ɪɴᴄᴏʀᴘᴏʀᴀᴛɪᴏɴ: ᴘʀᴏᴏꜰ ᴏꜰ ᴘᴜʙʟɪᴄᴀᴛɪᴏɴ:
ᴇxᴇᴍᴘᴛɪᴏɴ ᴏꜰ ᴘʀɪᴠᴀᴛᴇ ᴘʀᴏᴘᴇʀᴛʏ. A notice of incorporation read-
ing "the private property of stockholders was exempt from cor-
porate suits" is held to be a substantial compliance with the
statute, the word "suits" instead of "debts" not being fatal to
the notice. The filing of an affidavit of publication of the notice
with the Secretary of the State is also held to be directory
only, and not essential to the validity of the incorporation.