MARY E. CALHOUN, Appellee, v. L. L. TAYLOR, Administrator, et al., Appellants.

**EVIDENCE:** Opinion Evidence—Relevancy—Irrelevant Rendered
1  Relevant—Values. Evidence as to values, irrelevant to the date in issue, is rendered relevant by the witness' estimating the rise in value between the relevant date and the date as to which he speaks.

**DESCENT AND DISTRIBUTION:** Advancements—Initial Value as
2  Bearing on Intent—Evidence. Evidence of the value of an alleged advancement at the time it was received by the heir is admissible, because having bearing on the intent of the grantor in making the conveyance, whether a conveyance of property to an heir was a gift or advancement being solely a matter of intention on the part of the intestate.

**DESCENT AND DISTRIBUTION:** Advancements—Valuation—Rule
3  to Determine. The amount at which an advancement will be charged to the receiving heir, for the purpose of distribution, is the value, at the time of the intestate's death, of the property advanced, *viewed and judged on the assumption that the said property was, at the time of intestate's death, in the same condition as when received as an advancement.*

**DESCENT AND DISTRIBUTION:** Advancements—Equalizing Dis-
4  tribution—Evidence. The probate files showing the amount of property on hand for distribution among the heirs are admissible in order to show that there is property on hand with which to equalize shares in connection with advancements.

**WITNESSES:** Competency—Transactions with Deceased—Nonpar-
5  ticipation. A witness incompetent to testify against an heir as to a personal communication with a deceased may, nevertheless, testify as to what he heard of a communication between deceased and another, *in which witness took no part*, even though on the same occasion witness and deceased did converse on *other* topics.

**DESCENT AND DISTRIBUTION:** Advancements—Intent of Intestate—Evidence. Whether an intestate intended conveyances to an heir as gifts or advancements may be established by the declarations of the intestate which are prior to the time. of the transfer or contemporaneous with it, *but not by intestate's subsequent declarations not part of the res gestae.*

**WITNESSES:** Competency—Transactions with Deceased—Administrator as Nominal Defendant—Effect. An administrator, when a defendant in real interest, may open the door to evidence of personal transactions with his deceased intestate, *but not when he is a nominal defendant only;* nor may an heir, codefendant with such nominal (administrator) defendant, open such door. because the administrator joined in the answer of said codefendant. (Sec. 4604, Code, 1897.)

PRINCIPLE APPLIED: Plaintiff, an heir, made all other heirs *and the administrator* (a non-heir) parties defendant, and prayed that certain conveyances of land made to the defendant heirs by the intestate be established as advancements, and that distribution be made accordingly. The defendant heirs and the administrator *jointly* took issue on this claim. The estate was ready for distribution, there being for distribution 80 acres of land and about $4,500 in the hands of the administrator. *The sole issue was whether the conveyances were advancements.* Defendants called an heir and sought to show a personal transaction and communication between the witness and the deceased intestate. *Held,* the witness was not competent, even though the administrator was a party defendant and joined in the answer of defendants.

**DESCENT AND DISTRIBUTION:** Advancements—Agreement to Relinquish Interest in Estate—Subsequent Advancement—Effect. An agreement by an heir, on receiving a certain advancement, *that he will accept the same in full of his then or future so-called "interest" in the grantor's estate,* is and remains binding and conclusive on said heir, even though subsequently the grantor, for some reason, makes an additional advancement to said heir. In other words, an heir who once waives all his interest is not *reinstated as an heir* by the grantor's subsequent generosity.

**DESCENT AND DISTRIBUTION:** Advancements—Voluntary Conveyances—Presumption—Burden of Proof. A naked voluntary conveyance from parent to child is presumed to have been intended as an advancement, with burden of proof on one contending for a gift only to so show. Evidence reviewed, and held insufficient to overcome the presumption.

**DESCENT AND DISTRIBUTION:** Advancements—Gist of Inquiry—Evidence. An advancement is a gift, *plus* an intent on the

part of grantor that such gift shall act as an advanced payment of the heir's interest in grantor's estate. It follows that evidence of grantor's declarations to the effect that he was *giving* or *going to give* this or that to an heir, throws little, if any, light on the gist of the inquiry, to wit, *the object of grantor in making the gift.*

**DESCENT AND DISTRIBUTION:** Decree—Lands in Foreign State 11 —Scope of Decree. A decree of a court of this state, assuming to fix the interest of an heir in lands in a foreign state belonging to the estate of a decedent, will not necessarily be expunged on appeal. The disposition of such portion of the decree, when it works equality between all the parties, will be left to the courts of the sister state.

**APPEAL AND ERROR:** Right of Review—Estoppel—Absence of 12 Prayer for Relief. One who not only did not, in the trial court, pray for certain relief, but resisted such relief, may not, on appeal, complain that the court did not grant such relief.

*Appeal from Appanoose District Court.*—FRANCIS M. HUNTER, Judge.

WEDNESDAY, OCTOBER 18, 1916.

G. N. WAILES died September 25, 1913, leaving eight children him surviving, and three children of a deceased son, William. After the payment of all debts, funeral expenses and the costs of administration, there remained for distribution $4,445.05, and there were 80 acres of land in Republic County, Kansas. On June 26, 1912, he had conveyed 80 acres in said county to each of the following children: Rebecca Horner, Emma Shoemaker, Samuel Wailes and L. C. Wailes. The consideration named in each of the deeds was $4,000. On October 1st following, he conveyed to Josephus Wailes 41 acres of land in Section 15, Township 69 north, Range 19, in Appanoose County, $4,000 being recited as the consideration, the grantor reserving the use and possession during life. He then conveyed to James A. Wailes 60 acres in Section 26 of the same township, reciting therein a consideration of $3,000, reserving the use and possession during

life; also conveyed to Sylvester Wailes another 80 acres in Section 15, with the consideration named as $4,000. Prior thereto, and on April 19, 1898, he had executed a conveyance to James A. Wailes of 80 acres, reciting a consideration of $3,000, and containing the following:

"$1,000 of the before named consideration given to the grantee therein, who is my son, which is an advancement to him in full of his interest as heir in my estate either at this or any future time. I, James Wailes, grantee, hereby accept the $1,000 hereinbefore stated in full of my interest in my said father's estate."

It also appears that, at the time of executing the respective deeds, Sylvester Wailes paid to his father $450; L. C. Wailes, $500; Samuel Wailes, $100; Mrs. Horner, $100; and Emma Shoemaker, $100; and that deceased had paid the plaintiff $3,350. Nothing appears to have been paid Charles, Flossie or Hazel Wailes, the children of decedent's deceased son, William. The plaintiff, Mary E. Calhoun, filed a petition, April 18, 1914, making the administrator and all the heirs parties defendant, alleging, in substance, the facts before recited, and prayed that said conveyances be treated as advancements by the decedent and applied on the respective shares in the estate of those receiving them; that said advancements be added to the property left by decedent in ascertaining the extent of the estate; and that the estate undisposed of be distributed accordingly. C. R. Porter was appointed guardian ad litem for Hazel Wailes, who was a minor, and joined the plaintiff in her petition and prayer. The defendants, other than Hazel Wailes, pleaded that the conveyances were made by decedent in distributing his estate and were intended as gifts, and therein decedent had carried out his design, except as to the children of William Wailes, which he was prevented from doing by his sudden death, and that, prior thereto, he expressed a desire that $4,500 be paid said children as their share; and they prayed that the petition be dismissed and payment be made to said children in accord-

ance with decedent's wishes, and that any property remaining be equally divided according to law. The court fixed the values of the property conveyed to the several children, held these to have been advancements, and ordered that the estate be settled accordingly. The defendants appeal.—*Affirmed.*

*L. C. Mechem* and *H. E. Valentine*, for appellants.

*C. W. Hoffman, Porter & Greenleaf*, for appellee.

LADD, J.—The issue tried was whether conveyances executed by decedent to six of his children and money given another should be treated as advancements or be regarded as absolute gifts. He died September 25, 1913, well advanced in years. Four of the deeds were executed June 26, 1912, and the other two, October 1st following. He died seized of 80 acres of land, and there remained of his personal estate for distribution $4,445.05. The cause was tried as at law, and is here reviewed on errors assigned.

I. Several witnesses, after qualifying, were asked to state the market value of land alleged to have been conveyed by way of an advancement, at the time of such conveyance,

1. EVIDENCE: opinion evidence: relevancy: irrelevant rendered relevant: values.

also at the time of decedent's death, and some testified to values at the time of the trial. Those speaking of values at the time of the trial estimated, in connection therewith, the rise in value since decedent's death, and in that way rendered the evidence relevant. Proof of

2. DESCENT AND DISTRIBUTION: advancements: initial value as bearing on intent: evidence.

the values of the several tracts at the time conveyed was admissible as bearing on the intent of the grantor in making the conveyances. Evidence of the values of the several tracts, if retained by the grantee, about the time of decedent's

3. DESCENT AND DISTRIBUTION: advancements: valuation: rule to determine.

death, in the same condition as when conveyed, was admissible; for such values were the measure of the respective advancements, if held to be such. *Finch v. Garrett*, 102

Iowa 381; *Eastwood v. Crane*, 125 Iowa 707. Such were the rulings of the trial court, and they are approved.

II. The inventory and appraisement of the personal property left by decedent, claims filed and the annual report of the administrator, showing full settlement of the estate

4. DESCENT AND DISTRIBUTION: advancements: equalizing distribution: evidence.

and the amount on hand, were received in evidence over objection, and rightly so. This was for the purpose of showing that there was property in the hands of the adminis-

trator, available in connection with advancements for equalization among the several children.

III. The husband of plaintiff testified to having heard a conversation between decedent and plaintiff, in which he (the witness) took no part, and in which decedent said, in

5. WITNESSES: competency: transactions with deceased: nonparticipation.

substance, that plaintiff should have as much out of the estate as other children; that he had given them land and had given her money; and that he wanted his property

equally divided. On cross-examination, it appeared that the witness had engaged in conversation with decedent on other subjects while at the table, but had not participated in that concerning his dealings with his children. That the witness may have spoken with decedent on some other subjects disconnected from the conversation exclusively between father and daughter did not preclude him from testifying to what was said in the latter. The test is whether the witness objected to as incompetent took part in the particular conversation on the subject inquired about, and if he did not, his testimony is to be received for what it is worth. *Dettmer v. Behrens*, 106 Iowa 585; *McElroy v. Allfree*, 131 Iowa 112; *McBride v. McBride*, 142 Iowa 169. *Tebbs v. Jarvis*, 139 Iowa 428, is not inconsistent with this conclusion, for there the evidence disclosed that the communication excluded was directly to the witness ruled to be incompetent.

IV. A nephew of decedent testified to having had a conversation with him "a little while before his death," and

was then asked, "What was said by your uncle in reference to what he had done with his property?"

6. DESCENT AND DISTRIBUTION: advancements: intent of intestate: evidence.

An objection as incompetent and not connected with the *res gestae* was sustained. Counsel for defendants then stated what they proposed to prove, and the ruling ·was not changed. This was excluded. Like inquiries and rulings occurred in examining several other witnesses. What decedent may have said after the execution of the deeds, in no manner connected with the *res gestae*, according to the ruling in *Ellis v. Newell,* 120 Iowa 71, was rightly excluded.

V.   Josephus Wailes, after testifying that he gave his father a deed to 80 acres of land in Kansas and received from him the conveyance of 80 acres of land in Appanoose County,

7. WITNESSES: competency: transactions with deceased: administrator as nominal defendant: effect.

was asked what, if anything, decedent had said concerning the reason for wanting to make the exchange. An objection that the witness was incompetent to testify under Section 4604 of the Code was sustained. Thereupon, counsel for defendants stated what was proposed to be proven. Somewhat similar questions were propounded to Sylvester and L. C. Wailes, and like rulings made. This is said to have been error, for that the administrator was a party defendant and joined the other defendants in their answer, and it is said that, inasmuch as the witnesses were called by the administrator, the prohibition of the statute was thereby waived, and they should have been permitted to answer. Such is undoubtedly the rule where the administrator is the real party in interest. *Dean v. Carpenter,* 134 Iowa 275; *Frick v. Kabaker,* 116 Iowa 494.

But the administrator was indifferent as between the parties and not interested in the outcome of the litigation. The evidence tendered was in no sense against the administrator as such. Counsel for appellants present the question as though the administrator's being a party would be controlling; but Section 4604 of the Code prohibits any party to

an action, or any person interested in the event thereof from being examined in regard to any transaction or communication between such witness and decedent *"against* the administrator." The testimony sought to be elicited was not and could not well have been against him. Moreover, as the other defendants were next of kin, the testimony must have been excluded as to them on the objection interposed, and, if excluded as to them and admitted as to the administrator, it would have had no bearing on the issues being tried. As the administrator was a nominal party, made such to enable the court to give directions as to the distribution of the property in his hands, upon deciding the controversy between the heirs of decedent, and as the only possible bearing of the evidence tendered was on such controversy, we are of opinion that the court rightly ruled that, by Section 4604 of the Code, the several witnesses were rendered incompetent to testify.

VI. On April 19, 1898, decedent conveyed to James A. Wailes 80 acres of land, with this stipulation in the deed:

8. DESCENT AND DISTRIBUTION: advancements: agreement to relinquish interest in estate: subsequent advancement: effect.

"$1,000 on the above consideration given to the grantee herein, who is my son, which is an advancement to him in full of his interest as an heir in my estate, either at this or at any future time. I, James Wailes, grantee, hereby accept the $1,000 hereinbefore stated in full of my interest in my father's estate."

On October 1, 1912, decedent conveyed 60 acres more to James, and appellants contend that this destroyed or waived the effect of the quoted condition contained in the previous deed. That such condition with its acceptance, standing alone, prevented James A. Wailes from participating further in decedent's estate, appears from *Jones v. Jones,* 46 Iowa 466. See *Stennett v. Stennett,* 174 Iowa 431. But this agreement, though preventing James from participating in his father's estate, did not prohibit the father from making another gift to his son nor interfere with the son's accepting it. Neither was inconsistent with the condition of the deed, and, there-

fore, ought not to be construed as defeating such condition. Doubtless the father regarded the $1,000 inadequate,. when compared with the shares in his estate that other children would receive. However, the motive is immaterial; for the subsequent gift in no manner impinged on the condition of the previous one, nor did it reinstate the son as an heir of his father when deceased.

VII. A voluntary conveyance from parent to child, in the absence of anything indicating a contrary purpose, is presumed to be an advancement, and the burden is upon him who asserts that it was an absolute gift so to prove. Whether it is an advancement or absolute gift depends on the intent of the donor at the time of the transfer. *Ellis v. Newell,* 120 Iowa 71; *Bissell v. Bissell,* 120 Iowa 127.

9. DESCENT AND DISTRIBUTION: advancements: voluntary conveyances: presumption: burden of proof.

Such intent is usually to be inferred from declarations of the donor prior to or at the time of making the gift. In ascertaining the purpose of decedent, it is well to bear in mind that the conveyances were gifts to the children in any event, and that mere declarations of decedent that he was giving or going to give throw little or no light on the transaction spoken of. Nor does the circumstance that he may have expressed himself as more competent to settle up his business or to divide his estate among his children necessarily indicate any more than that he thought he knew best the portions of his estate which would be most suitable for and advantageous to each. Neither expression can have any bearing upon the object sought to be attained by making the gifts, and both are entirely consistent with the presumed design of having his children share equally in his estate. A nephew testified that decedent said he was more competent to settle his business than anyone else, and that he did not want it to get into court; that—

10. DESCENT AND DISTRIBUTION: advancements: gist of inquiry: evidence.

"He was keeping enough for his own maintenance.

. . . He said what was left, if anything, was to be divided among his children.''

On cross-examination, the witness testified:

''My uncle said he was going to make a distribution of his estate. He was going to divide up his property. He thought he could do it better than anybody else. He did not tell me that he was going to give each of them an equal amount in value in money or in land. He said he was going to distribute a part of this at this time.''

Another nephew testified to a conversation with decedent in 1902, when the latter said he ''intended to divide his property himself without a will,'' and indicated his purpose of giving to his deceased son's children the share that would have gone to this son. Still another nephew swore to a conversation in the spring of 1912, in which decedent had stated that he intended to settle his estate.

''He did not want it to go to court. He thought he was more capable of doing it than anyone else.''

A neighbor during 40 years testified to having talked with decedent about disposing of their respective estates, and that decedent had said he wanted to dispose of his property while he was living. ''He said he would give them land as far as it would go.''

The witness testified that, at another time, ''he said he was going to start out and make deeds as far as the land would go, and if he did not have enough land, he would finish out with the money. He always claimed he would keep enough that he could take care of himself, and he said, 'What little when I am gone, the children can soon divide it.' ''

Counsel for defendants, Mr. Mechem, testified to a conversation with decedent, in which decedent had ''said he was dividing up his property among his children, and he wanted me to make out some deeds for him. . . . He said he thought that he had better do this so the children could have the property and be using it and it would be doing them

some good, and he wanted to do that while he was alive. He said he was keeping enough of his personal property that he might have what he wanted while he lived.''

No reason for discriminating against any of the children in favor of others appears in the record. If he had the purpose of distributing his property, this could be accomplished by advancements quite as effectually as by absolute gifts, and the circumstance that he retained a large amount of personal property and 80 acres of land is quite as consistent with the purpose of equalizing the gifts made as with the purpose of equal division of the remainder. If he once designed to dispose of all his property so that his estate would not get into court, he must have abandoned such purpose. In what he said, there is no indication as to how what was left should be divided among the children, and division among the children is not inconsistent with such a division as, when compared with prior gifts, shall equalize the shares bestowed on each. That they were to share his estate equally, he declared to the plaintiff, and nothing to be found in this record has persuaded us that such was not his purpose.

VIII. The judgment entered fixed the values of the land conveyed to each of the six children, other than James A. Wailes, and the amount advanced to plaintiff, and adjudged

11. DESCENT AND DISTRIBUTION: decree: lands in foreign state: scope of decree.

that plaintiff is entitled to one eighth of the entire estate, including the advancements, and Hazel, daughter of William Wailes, deceased, to one twenty fourth thereof, and to like shares of the Kansas land, and that:

''If there is not sufficient personal property belonging to the estate remaining for final distribution at this time to pay these two heirs the amount found due them, then the interest of Mary E. Calhoun and of Hazel Wailes in and to the real estate in Kansas belonging to the estate of G. N. Wailes is hereby increased to a sufficient amount to satisfy the deficiency due them, as found by the court herein.''

Were the land located in Iowa, there could be no doubt

about the propriety of this portion of the decree. In the absence of proof to the contrary, the laws of Kansas are pre-

12. APPEAL AND ERROR: right of review: estoppel: absence of prayer for relief. sumed to be like those of Iowa, and, as the provision in the decree tends to establish equality, we are not inclined to expunge it, but leave its disposition to the courts of Kansas. Appellants also suggest that the judgment should have ordered equalization among all the heirs. They prayed for no such relief, but, on the contrary, resisted its being granted, and, therefore, are not in a situation to complain.—*Affirmed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.