STATE OF IOWA, Appellee, v. J. A. BROWN, Appellant.

No. 41008.

JANUARY 17, 1933.

A. L. Heminger, Jo R. Jaques, and Merrill C. Gilmore, for appellant.

John Fletcher, Attorney-general, and Neill Garrett, Assistant Attorney-general, for appellee.

ALBERT, J.—The crime charged in the indictment is alleged to have been committed on November 21, 1928, and an indictment was returned April 2, 1931. At the time the alleged crime was committed, and also at the date of the return of the indictment, the following two sections of the Code of 1927 were in force:

"9279. No bank * * * or person engaged in the banking * * * business, shall, when insolvent, accept or receive on deposit * * * any money, bank bills or notes, United States treasury notes or currency * * *."

"9280. If any such bank * * * or person shall receive or accept on deposit any such deposits, as aforesaid, when insolvent, any owner * * * who shall knowingly receive or accept * * * any such deposits * * * shall be guilty of a felony * * *."

After defendant's indictment and before the trial, the legislature enacted Chapter 30 of the Acts of the Forty-third General Assembly, which went into effect by publication on April 17, 1929. Section 30 of said act reads as follows:

"Amending Penalty Statute Relating to Receiving Deposits When Institution Insolvent. That Section 9280 of the Code, 1927, be and the same is hereby amended by inserting after the word 'knowingly,' the spelling of which is completed in Line 8 thereof, the following: 'with intent to defraud or receiving financial benefit therefrom.'"

The portion of said act with which we are now concerned, as amended, reads as follows:

"If any such bank * * * accept on deposit any such deposits, as aforesaid, when insolvent, any owner * * * knowing of such insolvency, who shall knowingly *with intent to defraud or receiving financial benefit therefrom* receive or accept * * * any such deposits * * * shall be guilty of a felony, and, upon conviction, shall be punished by a fine not exceeding ten thousand dollars, or by imprisonment in the penitentiary for a term of not more than ten years, or by imprisonment in the county jail not more than one year, or by both fine and imprisonment."

It will be noted in passing that the amendment made by the forty-third general assembly does not change the penalty of the act (Section 9280) as it formerly existed. It is the claim of the defendant that by the amendment above referred to a legislative pardon was granted for all prior offenses where deposits were accepted without intent to defraud or receive financial benefit.

The aforesaid Chapter 30 of the Acts of the Forty-third General Assembly contains Section 35, reading as follows:

"All acts or parts of acts in conflict with the provisions hereof are hereby repealed."

Defendant argues that the reason that the last quoted clause of the statute, under which the alleged crime was committed, was repealed without any saving clause was to prevent a prosecution or punishment for a violation before the repeal. This seems to be the general rule (16 C. J. 70, Sec. 34), unless there be a general statute providing a saving clause. 16 C. J. 72, Sec. 37.

Section 63, Code 1927, reads as follows:

"Rules. In the construction of the statutes, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the general assembly, or repugnant to the context of the statute:

"1. Repeal—Effect of. The repeal of a statute does not revive a statute previously repealed, nor affect any right which has accrued, any duty imposed, any penalty incurred, or any proceeding commenced, under or by virtue of the statute repealed."

All saving clauses in regard to criminal offenses are to be con-

strued strictly in favor of the defendant. Jones v. State, 1 Iowa (Clarke) 395.

This question was before this court in State v. Shaffer, 21 Iowa 486, where the charge was cutting down and destroying trees on the land of another. In relation to this matter we said:

"Whatever may have been the rule of law, aside from any legislative enactment, it is clear, under our statute, that the court erred in sustaining the defendant's demurrer. Subdivision of Section 29 of the Revision (Sec. 26 of Code of 1851) provides that 'the repeal of a statute does not revive a statute previously repealed; nor does such repeal affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced under or by virtue of the statute repealed.' * * * The amendment to Section 4324 (Code of 1860) is to be construed in connection with this section, and with such section it is equivalent to adding to such amendment, 'provided that this amendment shall not affect any penalty incurred under the section aforesaid.' "

This seems to be the universal rule when there is a general statute providing saving clauses. See People v. McNulty, 29 Pac. (Cal.) 61; Heath v. State, 90 N. E. (Ind.) 310; State v. Lawrence, 77 N. E. (Ohio) 266; People v. Driessen, 144 N. W. (Mich.) 526; State v. Smith, 64 N. W. (Minn.) 1022; State v. Widman, 72 So. (Miss.) 782; Marion v. State, 20 N. W. (Neb.) 289; Commonwealth v. Drohan, 97 N. E. (Mass.) 89; McNulty v. People, 37 L. Ed. (U. S.) 882. For further citation, see 16 C. J. 72, Note 50.

It will be observed that under the original law the penalty was for knowingly receiving deposits and the receiver knew that the bank' was insolvent; while, under the law as amended, the defendant must not only know of the insolvency of the bank and knowingly receive and accept the deposit, but he must do so "with intent to defraud or receiving financial benefit therefrom." Or, to state it in a practical way, under the old law, to successfully convict, the State must prove three elements: (1) The insolvency of the bank; (2) that the party accused knew it was insolvent; (3) that he knowingly received the deposit. While under the law as amended, the State is required to prove a fourth element, to wit, either that at the time he received the deposit it was received with intent to defraud or to receive financial benefit therefrom.

The effect of the repealing clause in the Acts of the Forty-third

General Assembly heretofore set out must be construed in the light of Section 63, Code of 1927, as above set out.

Appellant says in argument:

"If the legislature does not indicate its intent, then, under the general saving clause, the repeal of the statute does not affect any penalty already incurred."

Adverting to the rule, Section 63, Code of 1927, the repeal of a statute "does not * * * affect * * * any penalty incurred." So far, then, the contention of the appellant cannot be sustained; but the statute also provides that this should be the construction "unless such construction would be inconsistent with the manifest intent of the general assembly."

The question then is: What was the manifest intent of the general assembly in passing Chapter 30 of the Acts of the Forty-third General Assembly?

The intent of the legislature must be determined by its enactment construed in the light of all of the circumstances. While it is true that it is no longer a crime to merely accept a deposit in an insolvent bank without the specific intent to defraud or receive financial benefit, we are unable to find anything in the facts or the act of the general assembly from which we can draw an intent on its part to pardon acts committed under the previous statutes.

The appellant urges upon our attention the case of Wyatt v. State, 238 S. W. (Tex. Cr. App.) 917. The question there ruled was the question of the sufficiency of the indictment bottomed on two previous Texas cases: Francis v. State, 235 S. W. (Tex. Cr. App.) 580; Ex parte Mitchum, 237 S. W. (Ct. Cr. App.) 936. The last two cases above cited are bottomed on Cox v. State, 234 S. W. (Tex. Cr. App.) 531, which case is bottomed on Holden v. State, 1 Texas Appeals 225; Harold v. State, 16 Texas Appeals 157; Chambers v. State, 25 Texas 307.

While the revived statute of the state of Texas has a general saving clause somewhat stronger than that in the Iowa statute, no reference whatever to such saving clause is made in any of these Texas cases, and each of the opinions is based upon the general rule that, if a penal statute is repealed, without a saving clause, there can be no prosecution or punishment for a violation of it before repeal. Each of these cases seems to have been decided under the general rule, in total disregard of the saving clause in their statute,

and no reference is made in any of them to the saving clause statute. As we view this matter, there is nothing to show that the legislature had any intent, either directly or by implication, to pardon prior offenders by the passage of said chapter of the Acts of the Forty-third General Assembly.

 The indictment in this case was returned in Van Buren County and by change of venue went to Jefferson County, where the case was tried. In the trial of the cause, the value of the assets of the Manning Bank became a material question, and various witnesses were permitted to give their opinions as to the value of the assets of said bank, consisting of personal property, bills, notes, and securities of various kinds; also, real estate situated in other counties than that in which the case was tried. In relation to this matter the court gave Instruction No. 17, reading as follows:

"Witnesses have been permitted to give their estimates of the value of certain real estate and personal property and of notes and other securities owned and held by the Manning Bank and S. W. Manning, as well as their estimates of the value of real estate and personal property of persons indebted to said bank. You have the right to consider the opinions of such witnesses, and in construing the evidence of the different witnesses as to their estimates or opinions of value, you should consider the fairness and reasonableness of their judgment and estimates, in connection with all of the evidence tending to establish the true reasonable value. You have the right to use your own knowledge of values and of affairs generally in connection with the testimony as to values which have been given by different witnesses. By this is meant that you are not obliged to rely wholly upon the opinions of witnesses as to such value, but that, in connection with such values, you may use and be guided by your own judgment in such matters."

Objection was lodged against this instruction, which is seriously argued on this submission. This instruction was approved in State v. Bevins, 210 Iowa 1031, but the assault now made against it was not urged against it in the Bevins case.

Under proper circumstances, an instruction on this subject may be given to the jury, but in no case, however, should the jury be instructed that their knowledge may be considered as evidence, or a substitute for evidence. The only use that the jury can make of their

knowledge of values is in passing upon the weight of expert as well as other testimony.

In the case at bar, the deposit was accepted on the 21st day of November, 1928. About 8 o'clock on the morning of November 22d following, the defendant called one Thad Sherrod, who had an open account in the bank and some certificates of deposit, and in substance closed the Sherrod account, by giving to him a note for $1,710, a check for $584.70, and $500 in cash. Evidence of the details of this transaction with Sherrod was admitted, although it was a transaction which occurred the day after the deposit on which this indictment was based was made. Assuming this to be a correct history of the Sherrod transaction, it was a diversion of the funds of the bank, in violation of Section 9282, Code 1927, and subjected the defendant to the penalties there provided. In other words, it was the proof of another crime,—a phase of the question not discussed in the Bevins case. A protracted conversation took place between counsel and the court as to the admissibility of this testimony, and the court said:

"This testimony will be admitted under the same caution heretofore given in regard to this, being solely for the purpose of bearing on the question of insolvency or solvency of the bank on the 22d day of November, 1928."

In pursuance thereof, the court gave Instruction No. 20, reading as follows:

"There has been admitted in evidence the testimony of the witness Sherrod as to a transaction on November 22, 1928, and various items of documentary evidence prepared after November 21, 1928, including certain papers, inventories, and orders in the matter of the receivership of S. W. Manning in the district court of Van Buren County, Iowa, and certain schedules filed in the bankruptcy court in the matter of the bankruptcy of S. W. Manning, and also, certain reports and orders in the matter of the estate of Nannie B. Manning, deceased. These matters were all admitted as bearing upon the questions of ownership and the solvency or insolvency of the Manning Bank and S. W. Manning on November 21, 1928, and for no other purpose.

"You are especially cautioned that the evidence and matters above pointed out do not tend to show that the defendant, J. A.

Brown, knew that the Manning Bank was insolvent on November 21, 1928, and such matters are not to be considered by you in determining whether defendant knew the Manning Bank and S. W. Manning were insolvent on November 21, 1928. Evidence tending to show that the defendant knew that the bank was insolvent on November 22, 1928, or at any date after November 21, 1928, does not tend to show that he had such knowledge on November 21, 1928; as presumptions or inferences do not relate backward, and the law does not presume or infer that what a man knows today, he also knew yesterday, or at some prior date."

We have read the record on this question, and, under the limitations of the statement of the court and Instruction No. 20, we are unable to see how this testimony could in the least degree tend to show the solvency or insolvency of the bank on the 21st day of November, 1928. The fact that a bank makes settlement with a depositor and pays him in full, if it tends to prove anything, tends to prove the solvency of the bank, and not its insolvency. The testimony of such a transaction might, under certain circumstances, have some weight in determining the knowledge of the banker as to the condition of the bank; but, under the fact situation in this case, we cannot conceive that it had any weight on that question.

We conclude that the court erred in admitting this testimony in relation to the Sherrod transaction for the purposes stated in the instruction quoted, and the same was prejudicial to the rights of the defendant.—Reversed.

All the Justices concur.