IN RE ESTATE OF J. H. STENCIL.

FLORENCE MILLER, Claimant, Appellee, v. GUS LESTER, Executor, Appellant.

No. 41767.

1196

APRIL 4, 1933.

Hays, Baron & Mathews, for appellant.

Tom E. Murray, for appellee.

DONEGAN, J.—J. H. Stencil was a resident of Sioux City, Iowa, for many years before his death which occurred on February 1, 1931. In February, 1921, he married the mother of the claimant. His wife died during the month of January just prior to his death. Claimant and her husband lived with her mother and said Stencil for about two years after this marriage, when they moved across the street from the place where the Stencils lived. All of these persons continued to live in these same locations until the deaths of the said Stencil and his wife. Said J. H. Stencil left a will which was admitted to probate and Gus Lester, who was the husband of claimant's sister, was appointed as executor of said will. On the 31st day of March, 1931, claimant filed her verified claim against said estate in the sum of $2,787.50 and interest, for work and labor and practical nurse's services rendered at the special instance and request of the deceased during his lifetime, and for money advanced to the deceased for his benefit. The executor filed an answer which contained a general denial, specifically denied that there was any agreement for rendering services between the claimant and deceased, and alleged that, if claimant did render any services to deceased, she did not expect any compensation therefor and deceased did not agreed to pay therefor, and that such services were gratuitous. Trial was had to a jury. At the close of claimant's evidence the executor made a motion to direct a verdict in favor of the executor on various grounds, which motion was overruled by the court. This motion was renewed at the close of all the evidence, and again overruled by the court. The jury returned a verdict in favor of the claimant for $2,200. From this verdict and judgment thereon the executor appeals.

■ I. In his charge the court first explained the issues, and then, in his third instruction, told the jury as follows:

"And you are instructed that the burden is upon the plaintiff claimant to prove by a preponderance of the evidence, before she will be entitled to recover herein, the material allegations of her claim substantially as set forth in Par. 1 of this charge, except that the law does not cast the burden of proving that a claim is unpaid upon a party filing a claim against an estate, and. the burden of proving payment is therefore upon the defendant herein."

The executor complains of that part of the instruction which tells the jury that "the burden of proving payment is therefore upon the defendant herein." Appellant contends that this portion of the instruction not only called the jury's attention to and gave a specific instruction in regard to an issue which was not in the case, but that it placed the burden on the appellant in reference to such issue; and that, therefore, this instruction was necessarily prejudicial. An examination of the entire charge will show that at no other place therein was the jury told that there was any issue in regard to payment; and at no other place in the charge was the jury told that appellant did not claim that the services had been paid for, or that the burden of showing payment was not on him in this case. It is probable that the statement complained of was made inadvertently in connection with the court's explanation to the jury that, under the law governing this particular case, the burden was not on the plaintiff to show that payment had not been made, and it is quite possible that it in no way confused or misled the jury. This does not change the fact that this portion of the instruction had no place in this case. and that it may have been considered by the jury to the prejudice of appellant. In such cases we have held that an instruction placing the burden upon a litigant to prove an issue not in the case is prejudicial error. Granteer v. Thompson, 203 Iowa 127, 208 N. W. 497; City National Bank v. Mason, 181 Iowa 824, 165 N. W. 103.

■ II. The executor's second allegation of error has to do with a part of the ninth instruction in which the court said:

"You have the right to use your own knowledge of the value of such services and of affairs generally in connection with the testimony as to values which have been given by the witnesses. By

this is meant that you are not obliged to rely wholly upon the opinions of witnesses as to the value of the services, but that in connection with such opinions .you may use and be guided by your own judgment in such matters."

The portion of instruction complained of is almost identical with the instructions which were approved by this court in Hoyt v. Railroad Co., 117 Iowa 296, 90 N. W. 724, and in Youtzy v. City of Cedar Rapids, 150 Iowa 53, 129 N. W. 351. See, also, Northrup v. Herrick, 206 Iowa 1225, 219 N. W. 419, and State v. Brown, 215 Iowa 600, 246 N. W. 258, 261. In this last case cited, however, we gave a warning in connection with such instructions, and said:

"Under proper circumstances, an instruction on this subject may be given to the jury, but in no case, however, should the jury be instructed that their knowledge may be considered as evidence or a substitute for evidence."

The instruction given in this case does not violate the warning in the case of State v. Brown, supra. Appellant also argues that the enactment of section 11471-d1, Code 1931, has changed the law and rendered the rule recognized in the above-cited cases inapplicable. With this argument we do not agree. It was the law prior to the enactment of this statute that jurors should try the issues solely on the evidence and in accordance with the instructions. The instruction complained of does not violate the statute, and is in harmony with the prior holdings of this court, and we find no error on the part of the trial court in giving it.

III. Appellant alleges error on the part of the court in overruling the appellant's objection to the competency of the witness, Leonard Miller, when testifying to certain statements made by J. H. Stencil, deceased. Leonard Miller was the husband of the claimant. The record of the part of the witness' testimony, out of which the question of his competency arose, is as follows:

"Sometimes Mr. Stencil would come over to our home and wake us up in the middle of the night. Q. When Mr. Stencil came to your home, Mr. Miller, what, if anything, did you hear him say to Mrs. Miller? Mr. Mathews: I would like to ask a question or two for the purpose of laying the foundation for an objection. Cross-examination by Mr. Mathews. At the time I heard this statement made we were in bed in the same room. Q. Did you talk to Stencil,

did you say anything to him when you heard him call? A. Yes, I said it was all right, I said it was all right, she can go over. Mr. Mathews: Object to the witness as incompetent to testify to this conversation for the reason the witness is incompetent to testify to any personal transactions or communications between the witness and Stencil, and the interlocutory cross-examination shows the witness took part in that conversation. The Court: It will be sustained in the present state of the record. Direct Examination Resumed. At the time Mr. Stencil would come to our home my wife would answer the door. I was able to hear what was being said at the door. The door was in the other room, but it is all open anyway, like one room. Q. What, if anything, did you hear Mr. Stencil say to Mrs. Miller at the door? Mr. Mathews: That is objected to for the reason that the witness has shown that he took part in the conversation and the witness is incompetent to testify to any personal transactions or communications between the witness and the deceased. The Court: Overruled. A. Well, he asked her to come over, that the old lady was awful sick, he wanted her to come over and take care of the old lady. This happened quite a few times; she happened to get sick all of a sudden during the night and of course we were the nearest."

Appellant admits that, under what is known as the "dead man statute" (Code 1931, section 11257), the witness would be competent to testify to any conversation between the deceased and the witness' wife, who is the claimant, if the witness took no part in such conversation; but he contends that the record shows clearly that the witness took part in the conversation concerning which he testified, and he is, therefore, incompetent. It is quite apparent that the evidence refers to not one but to several calls made by the deceased at the Miller home during the nighttime. In his cross-examination, for the purpose of laying ground for objection, appellant's attorney asked the witness the specific question: "Did you talk to Stencil, did you say anything to him when you heard him call?" To which the witness answered: "Yes, I said it was all right, I said it was all right, she can go over." The objection to the competency of the witness was thereupon interposed and sustained by the court. As the portion of the record set out above shows, the direct examination then proceeded, and the witness stated that when Stencil came to the Miller home the witness' wife would answer the door; that the

witness was able to hear what was being said at the door; that the door was in the other room, but it was all open anyway, like one room. Witness was then asked the direct question as to what he heard Stencil say to Mrs. Miller at the door, and, over proper objection of appellant's attorney, he was allowed to answer. The record shows that before the direct examination was resumed and appellant's final objection to the competency of the witness interposed, the witness stated that he talked to Stencil when he heard him call, and that he told Stencil: "Yes, I said it was all right, I said it was all right, she can go over."

The further direct examination referred to what was said by the deceased to Mrs. Miller at the door. If, as the witness had already testified, he had talked to Stencil when he heard him call, and told him it would be all right, how can it be said that the witness took no part in the conversation which occurred at the door?

The direct examination which followed does not show that what Stencil said was directed to Mrs. Miller alone. The witness was not asked as to anything said to Mrs. Miller in a conversation in which the witness took no part. The record does not show that there was any conversation at the door or any other place on the occasions when Stencil called which was separate and distinct from the conversation in which the witness took part when he told Stencil that it was all right that Mrs. Miller could go over. In the case of Calhoun v. Taylor, 178 Iowa 56, 159 N. W. 600, the husband of the plaintiff was a witness and was asked in regard to what the deceased said to the plaintiff. It appears that the conversation inquired about took place at the table, and that the witness might have spoken to the decedent on the other subjects disconnected with the conversation exclusively between the father and daughter. It further appeared, however, that the witness expressly stated that he did not take any part in a conversation which was exclusively between the father and daughter, and we held that an objection to the competency of the witness was properly overruled. It is quite clear that in the Calhoun case the conversation to which the witness was allowed to testify was exclusively between father and daughter, and that the witness stated that he did not take any part in this conversation which was exclusively between the father and daughter.

In the case now before us, however, it appears that the witness did talk to the deceased at the time the deceased called and that the talk between witness and deceased was in regard to the very matter

which was the subject of the conversation between the deceased and the witness' wife. While the rule is clearly established that the prohibition of the statute does not extend to conversations between the deceased and a third person in which the witness took no part, it is undoubtedly true that in many cases this rule is abused by the simple statement of the witness that he took no part in the conversation. We believe that the cases construing the competency of a witness to testify to conversations with a deceased person have been extremely liberal to the witness, and we do not feel that we should encourage further abuse in this regard by refined distinctions as to different portions of a conversation when, as in the case before us, it is clear that the witness did talk with the deceased at the time and place and in regard to the very subject-matter of the conversation between the deceased and the third person, concerning which he testifies. If there had been a separate and distinct conversation between the deceased and the wife of the witness, in which the witness took no part, this could easily have been shown by further direct examination before the witness was asked and allowed to answer the question proposed to him. This was not done, and, in the state of the record as it is presented to us, we feel that the court committed error in overruling the appellant's objection to the competency of the witness.

-Appellee suggests that the evidence was of little importance from the standpoint of materiality to the issues involved, because the appellee's claim was based upon an implied agreement and the evidence thus introduced referred to an express agreement. We cannot agree with appellee's view of this matter. The evidence as to the conversation between deceased and the witness' wife does not indicate that it had any reference to an express agreement for payment. This evidence shows that a request was made by the deceased for appellee's services, and such a request, without any express agreement in regard to payment, would certainly be very material evidence in showing knowledge of services and implied promise to pay therefor on the part of deceased, and in thus establishing the implied contract upon which appellee's claim was based.

IV. Appellant also complains of the court's action in restricting the cross-examination of the witness, Mrs. Sam Little, in regard to market value of the services rendered by the claimant. A perusal of the record, however, shows that the witness had been examined quite extensively as to this matter, and that she had already answered

that she did not know such market value, when the appellant's attorney again asked her whether she was able to give such market value. We believe that the matter had already been sufficiently inquired into by appellant's counsel and that the refusal to allow further questioning along the same line was within the court's discretion and did not constitute any denial of an absolute right on the part of appellant.

Other errors are assigned by the appellant as ground for reversal. These other alleged errors, however, are based upon the state of the evidence as shown by the record now before us. As the case must be reversed for the errors pointed out in divisions I and III of this opinion, and, as the evidence on a new trial may be materially different from that now before us, we do not deem it necessary or advisable at this time to consider the remaining errors complained of by the appellant.

For the reasons pointed out in the opinion, the judgment of the trial court will be reversed.

All Justices concur.