The State v. Reidel.

THE STATE v. REIDEL.

1. Criminal law: FALSE PRETENSES. Our statute (Rev. § 4394) has
   changed the common law rule as to cheats, and thereunder any
   person who designedly, by false pretense, and with intent to defraud,
   obtains any money or property from another, may be convicted of
   obtaining money under false pretenses, though no false token affect-
   ing the public was used.

2. —— EVIDENCE: RIGHT OF DEFENDANT TO BE CONFRONTED BY WITNESSES.
   The defendant in a criminal prosecution has a right to be confronted
   by the witnesses against him and see them face to face.

3. —— RULE APPLIED: NOTARIAL PROTEST. In a prosecution for ob-
   taining money under false pretenses consisting in representations by
   the defendant that he had money on deposit in a bank in another
   State, upon which he drew drafts and placed them in the hands of
   a local bank to be forwarded for collection, the notarial certifi-
   cate of protest of the notary who protested the drafts thus drawn is
   not admissible in evidence against the defendant for the purpose
   of showing that he had no money on deposit in the bank upon which
   the drafts were drawn.

4. —— STATUTE CONSTRUED. The statutory provision (Rev. § 4011) res-
   pecting the effect of the certificate of protest of a notary in evi-
   dence, relates to civil cases only.

5. —— ERROR WITHOUT PREJUDICE. Where it is possible that a verdict of
   guilty was produced by the erroneous reception of evidence, and
   erroneous rulings in respect thereto, the Supreme Court will not
   undertake to say that it was error without prejudice, but will reverse
   and remand the cause for a new trial.

The State v. Reidel.

*Appeal from Polk District Court.*

FRIDAY, JANUARY 29.

FALSE PRETENSES : CONSTRUCTION OF STATUTE : NOTARIAL PROTESTS AS EVIDENCE IN CRIMINAL CASES : RIGHT RESULT NOT VITIATED BY 'IMMATERIAL ERRORS, ETC. — Indictment under section 4394 of the Revision for cheating by false pretenses.

The indictment, in substance, charges, that in April, 1868, the defendant, with intent to defraud one Charles Gamp of his money, designedly, falsely and fraudulently, represented to him in the county of Polk, that he (the defendant) had on deposit in the First National Bank of St. Paul, Minn., the sum of over $900; that he had placed in the hands of the First National Bank at Des Moines for collection a draft for $480, ʿdrawn on the said bank at St. Paul; that it would be paid as soon as presented; that the defendant took a receipt from the bank at Des Moines, signed by the cashier, to the effect that such a draft had been received of the defendant for collection, and delivered the same to the said Gamp; that he delivered to Gamp a similar receipt, signed by the cashier of the State National Bank at Des Moines, in which it was stated by the cashier that he had received of the defendant a draft for $500, drawn on himself at St. Paul, to be paid to him when collected, less costs of collection.

And it is also alleged, that he represented to Gamp that said drafts would be paid when presented, as the money was on deposit in the bank at St. Paul, to meet them; that he had been informed by the officers of the Des Moines banks that the money was on the road, and would be received in a day or two, etc., etc. By means of which, etc., the defendant, with intent, etc., obtained from the said Gamp, the sum of fifteen dollars.

The indictment negatives the truth of the representa- tions of the defendant that he had money on deposit at St. Paul, or that he had been informed by the cashiers of the Des Moines banks that the money was on the road, or would soon be received.

The defendant pleaded not guilty, was tried, convicted, and sentenced to three years' imprisonment in the penitentiary. From this judgment he prosecutes the present appeal.

It appeared in evidence, that the defendant was a stranger in Des Moines, and a Prussian by birth. He became acquainted with Gamp (the party from whom he obtained money), a barber, and also a Prussian. He represented to Gamp that he was out of money, and wanted to borrow a few dollars, with which to pay his board. Gamp let him have five dollars at one time, and two dollars at another. This was, as Gamp says, out of a kindly regard for him, because they were of the same nationality. The defendant went to one of the banks at Des Moines, and representing that he had money on deposit in St. Paul, drew a draft on himself, payable at St. Paul, for $500, and left it with the bank, to be sent forward for collection, taking the cashier's receipt therefor. About the same time, he went to another bank in Des Moines, and drew a draft on the First National bank of St. Paul, for $480, and had the same sent forward for collection, taking the cashier's receipt for the same. These two receipts were delivered by the defendant to Gamp, and the defendant soon afterward represented to him that the money on these drafts would be paid when presented, and that the bank officers in Des Moines had told him that the money would be here in a day or two. Gamp testified that in consequence of these representations he let him have ten dollars, soon after fifteen dollars, and soon after fifteen dollars more. Defendant also

drew another draft on St. Paul at about the same time, all being drawn within two days of each other; none of these were paid, and all were returned to the banks at Des Moines. Two were protested, one was not, for the reason that the cashier at Des Moines had directed no protest to be made if the draft was dishonored.

None of the bank officers had given the defendant information to the effect that the drafts had been paid, or that the money was on the way. At one of the banks the defendant never called after he drew the draft. At the other he called before it was time to get returns, inquired about it, and drew his second draft, after which he did not again return to the bank.

He left Des Moines without notice, and was arrested in Omaha. The above is a sufficient outline of the more material facts, to make intelligible the points ruled in the opinion. The defendant produced no evidence.

*McHenry & Bentley* for the appellant (defendant).

I. The rule of law is, that when the accused is upon trial he should be confronted with witnesses — face to face, nor shall depositions, certificates of notary public, nor any other official paper be used as against him.

The above proposition is supported by the following authorities, to wit: 10 Ohio (Wilcox), 354; 3 Hill, 294; Constitution of Iowa, § 10, p. 989.

II. Cheating and obtaining money or other property by *false pretenses* at common law, must be of that nature and character as affects the public, as using false weights and measures. And the law does not hold obtaining money by false pretenses in a joint business transaction subject to indictment. 2 Russell on Crimes, 264–5–6; 1 Hawkins Pl. Cr., 346; 1 Salkeld, 150, 379; 2 How. 1125; 19 Pick. 182; 17 Wend. 351; 1 Richardson (S. C.) 244; 4 Hill, 10; 3 id. 168; 1 Bishop C. L. 422, 433.

III. The telling a falsehood whereby a person obtains money or goods of another is a moral crime only, and the person so deceived or injured, has a civil remedy at law for the property. 6 Mass. 72; 7 John. 201; 1 Green. 376, 387; 2 East Pl. Cr. 673, 422; 6 T. R. 565.

IV. The court cannot assume facts and then instruct the jury in the law upon such assumptions. 11 Wend. 424, 84.

V. The section in the Revision of 1860 of Iowa, upon which the defendant was convicted, partakes solely of the common law, and does not come in conflict with the statute law. Rev. 1860, p. 752, § 4394; 2 R. S. N. Y., p. 861, § 53; 1 Bishop C. L., p. 86, § 86; id. p. 91, § 91; id. p. 82, § 81; id. p. 76, § 76.

*Henry O'Connor*, Attorney-General, for the State.

DILLON, Ch. J. — I. The first assignment of error relates to the refusal of the court to give to the jury certain instructions asked by the defendant. The first of these is, in substance, that no indictable offense is charged against the defendant, because no false tokens were used, and the acts imputed to the defendant are of private and not public concern. In other words, it is claimed that the statute has not altered the common law as to cheats, but is simply in affirmance of it.

1. CRIMINAL LAW: false pretenses.

It provides, that "if any person designedly, and by false pretense, * * and with intent to defraud, obtain from another any money, goods or property * * he shall be punished," etc. Revision, § 4394.

If the representations and acts, or the material portions thereof charged against the defendant in the indictment are true, his case is embraced within the statute provision just quoted.

The questions presented by the other instructions asked by the defendant will be considered hereafter.

II. The main point in this appeal, however, relates to the action of the District Court in regard to the notarial certificates of protest. By referring to the statement of facts, it will be seen that two of the drafts drawn by the defendant were returned protested to the banks in Des Moines which had forwarded them for collection.

2. —— evidence: right of defendant to be confronted by witnesses.

The officers of these banks were witnesses and stated, without objection, that the drafts were drawn, sent forward, were not paid, and were returned protested.

After these officers had testified, the State offered in evidence the drafts which had been so drawn and returned, with the accompanying certificates of protest by the notaries public in St. Paul. To this defendant objected, but the same were admitted in evidence, and the defendant excepted.

He now assigns as error the action of the court in admitting in evidence the certificate of the notary public; and the instructions given by the court in reference thereto, and the refusal by the court of the one asked by the defendant on the same subject. The court instructed the jury, on this subject, as follows:

"3. The drafts drawn on the St. Paul bank and the notarial protests returned therewith are not conclusive that the defendant had no money in the bank at St. Paul, but such drafts and notarial protests are proper for you to consider as tending to show that he had no money deposited in said bank.

"But if you find that the said drafts were sent to the said bank at St. Paul for acceptance or payment, and that such acceptance and payment were refused by said bank, it would be a strong circumstance to show that he had no money there, or not sufficient to pay said draft."

The defendant asked the court to direct the jury, "that the burden of proof is with the State, to show that the

defendant had no funds in St. Paul to draw on, and on this subject and in this case, the protests of notaries public, if unsupported by other testimony, are not sufficient to establish such fact." This was refused as asked ; and the instruction of the court on this subject, is the one above copied.

The question is fairly presented, whether the certificate or instrument of protest of the notary public was admissible in evidence against the defendant, to prove the allegation that the defendant had no money on deposit in the bank at St. Paul.

The Constitution contains the usual clause, giving the defendant in "all criminal prosecutions, the right to be confronted with the witnesses against him." Bill of Rights, § 10.

The chapter on evidence, in the Civil Code, contains this section : " The usual protest of a notary public, without proof of his signature or notarial seal, is *prima facie* evidence of what it recites concerning the dishonor and notice of a bill of exchange or promissory note." Rev. § 4011.

In the Criminal Code occurs this general provision : " The rules of evidence in civil cases, are applicable also in criminal cases, except as otherwise provided." Rev. § 4805.

It is our judgment, in view of these various provisions of the law bearing on the subject, that the certificate of protest of the notary public was not competent evidence against the defendant, for the purpose for which it was offered and used.

The material pretense alleged to be false, was that the defendant represented that he had funds on deposit in the First National bank at St. Paul. The falsity of this representation it was, of course, incumbent on the State to establish,—that is, the State must lay before the jury

such evidence, direct or circumstantial, as shall satisfy them that the defendant had no funds on deposit in the bank at St. Paul. Under the Constitution, he has the right to see the witnesses against him, face to face. Hence the State could not prove the non-existence of funds in the bank at St. Paul, by the deposition of any officer of the bank, nor could it prove this fact by showing the declarations of those officers. The dishonor of a bill or note may, in civil cases, be proved by the oral or written testimony of the notary, or other person who presensed it. But the deposition of the notary could not be used against the defendant in a criminal prosecution ; the Constitution forbids it. *Dominges* v. *The State*, 7 Sm. & M. 475 ; *Farrington* v. *The State*, 10 Ohio, 354. Can the mere certificate of protest be thus used ? It seems to us not.

The statute in speaking of such protests has reference to civil cases. The main purpose of the section referred 4. —— statute to (4011) is to make the certificate of the construed. notary evidence without proof of his signature or seal. *Sather* v. *Rogers*, 10 Iowa, 231 ; *Thorp* v. *Craig*, id. 461.

The notary presents a bill for acceptance or payment and it is refused. He knows the fact that he presented it, and that the drawee refused to accept or to pay. And it is these facts of which he has personal knowledge, that he states in his certificate of protest. Whether the drawee had funds he does not know. The object of the protest is to hold the drawer or indorsers, and they are liable if the bill has been dishonored and notice has been given, whether the drawee had or had not funds of the drawer in his hands.

But in the case at bar the question is different. To make the defendant liable, the State must establish the fact that he had no funds in the bank. The notary can-

not know or certify to that fact. The officers of the bank may tell him so, but this is their declaration simply and could not be admissible against the defendant to prove the fact declared. Such a declaration is not, in a criminal case, clothed with the character of evidence by merely being certified to by a notary public. *Farrington* v. *The State, supra.*

It is our opinion that the court erred in admitting the protests in evidence to prove the fact of the want of funds in St. Paul, and in refusing to give the instruction on this subject, before copied, asked by the defendant.

It has been suggested that even if this action was erroneous it ought not to operate to reverse the judgment, 5. —— error without prejudice. because, aside from the notarial protests, the evidence abundantly shows that the defendant had no money on deposit in St. Paul.

It is true, that each of the cashiers of the banks at Des Moines, at which the drafts on St. Paul were drawn by the defendant, and who, at his instance, had forwarded them for collection, testified, without objection made at the time, that they were returned unpaid and protested. Even if objection had been made, it was competent for the State to trace the history of those drafts, to show the drawing thereof by the defendant, that they were sent forward and that they had been returned unpaid.

So the State might show as it did, the number of the drafts drawn at the different banks, the receipts taken, the use made of them, defendant's failure to wait for returns, to call for the drafts or the proceeds, and the like circumstances; and these facts are competent as tending to show that the defendant had in fact no money on deposit in St. Paul. In other words, this fact may be established, as we are willing to grant, by circumstances as well as by direct evidence.

In view of the case made against the defendant, and

of the fact that if he had money in St. Paul it would be easy for him to show it (as it is open to *him* to use the depositions of the bank officers or others), we also grant, that the failure of the defendant to produce any evidence, is a circumstance against him.

But, as we cannot say that the verdict of guilty was not, or might not have been brought about by the erroneous reception of the notarial protests and the erroneous rulings of the court in respect thereto in the instructions given and refused, it is the right of the defendant to have the judgment reversed and a new trial given him. This is accordingly ordered.

Reversed.