Mary J. Smith, Appellant, v. Jones County, Appellee.

**COUNTIES:** Negligent Placing of Barrier in Highway. The doctrine that a county is liable for negligence in the construction and maintenance of county *bridges* and *approaches* thereto does not embrace liability for the negligent placing and maintenance of a barrier, not on an *approach,* but *in the public highway,* in order to divert travel from a destroyed bridge.

*Appeal from Jones District Court.*—F. F. Dawley, Judge.

February 9, 1921.

ACTION for damages for personal injuries resulting from an automobile accident, upon or near one of the highways of defendant, and at or near the former location of an alleged county bridge. At the close of plaintiff's evidence, there was a directed verdict for the defendant, and the plaintiff has appealed.— *Affirmed.*

*Redmond & Stewart, Crissman & Linville,* and *Ray J. Mills,* for appellant.

*B. E. Rhinehart,* County Attorney, and *Doxsee & Doxsee,* for appellee.

EVANS, C. J.—The plaintiff is a married woman, and, at the time- of the accident, she was riding in an automobile driven by her husband. While driving at night upon an unfamiliar road, Smith, the driver, suddenly discovered in front of him, at a very short distance, a barrier across the road. Being unable to stop, he turned to the right. Before he was able to stop, the automobile had crashed through the fence and had skidded into a creek, or dry run, in such a way that the plaintiff was thrown out and severely injured.

The contention for the plaintiff is that the barricade guarded the former location of a county bridge, which had been washed out by a freshet some six weeks before, and that the barricade was inadequate and was not properly placed, and that, therefore, the accident was the result of a defect in a county bridge, within the meaning of the law of county liability.

To be more specific, the highway in question extended east and west, and the plaintiff was driving westward. A dry run, called a creek, crossed the highway at right angles. This creek was spanned by a bridge 16 feet in length. It was built by the county some 16 years before. On June 12, 1917, this bridge was carried away by a freshet. The authorities constructed barriers, and stopped public travel thereon for the period of one week. It is the east barrier that is involved herein. The highway was fenced on either side. On the north side was Miller's fence, inclosing his meadow. Near the bridge was a gate in this fence. Its west post was 20 feet farther east than the eastern end of the

former bridge. Within a week, the authorities had built a temporary bridge across the run, a few rods northerly from the highway. They arranged with Miller for the right of temporary travel through this gate into his meadow, and out opposite and over the temporary bridge. The gate was, therefore, temporarily open to public travel. The eastern barrier across the highway was so placed as to turn the travel into such gate. The distance of the barrier from the eastern bank of the creek was from 7 to 10 feet. The travel did turn to the temporary way, and did quickly cause a well-worn traveled track, which was readily noticeable to all observers. Such travel had continued for nearly six weeks, up to the date of the accident, which was July 29, 1917. The road was level at this point from fence to fence, without other obstructions than the barrier, and without ditches. The barrier was observable in the daytime from the top of a hill 800 feet away. It was observable in the nighttime as far as the automobile lights would carry their rays. Some of plaintiff's witnesses testified that they had observed it at night for a distance of 150 feet. Plaintiff's husband testified that his automobile lights were strong enough to disclose objects at least 90 feet away. He testified, also, that he did not, in fact, discover the barrier until he was within 10 or 15 feet of it. He then turned suddenly to the right, but without knowledge of the open gateway or of the course of the temporary road. Instead of turning into the gateway, he drove just west of its western post. In so driving, his course was northwesterly. Before he could stop, his left wheels skidded down the sides of the dry run, in such a way that the plaintiff was thrown out and injured. The actual place of the accident was about midway between the temporary bridge and the location of the former bridge, and was not, in fact, upon either the regular highway or the temporary highway.

The general theory upon which plaintiff's suit is predicated is that the barrier across the highway was inadequate and was improperly placed: inadequate because it was not large enough to be readily seen at a sufficient distance, and because it was not lighted; and improperly placed, because it ought to have been stationed at a point farther east, and, therefore, farther removed from the location of the bridge. The argument is that the

erection of such barrier and the erection of it at such place created a condition which was dangerous to public travel, and constituted a mere trap for the unwary. There is no dispute in the record as to the general character of the barrier, or as to the approximate place of its location. It is undisputed, also, that to have placed the barrier at a substantially greater distance easterly would have cut off the travel from the gate, and likewise undisputed that the barrier was made of plank, supported by uprights.

The particular ground on which the trial court sustained the motion for a directed verdict does not appear in the record. The argument for appellant is predicated upon the broad proposition stated in the brief as follows:

"A county having the power to bridge creeks traversing highways, and undertaking to construct bridges, is liable for negligent construction of such bridges and approaches thereto. * * * The defendant county, having the power to keep its county road open to the public, and inviting the public to travel over the same by designing and constructing a detour around the washed-out bridge, and having assumed to do so, it is in duty bound to the exercise of reasonable care, and is liable for damages due to negligence in plan or construction. If signs, danger signals, lights at night, outstanding barriers, removal of grass or weeds on declines, guards, and guard rails, were reasonably necessary, in the exercise of due care, then failure in these respects entails liability."

Counsel have laid their foundation too broadly. It is not correct that the field of liability of a county is coextensive with the field of duty of its public officers. We see no way to distinguish this case, in its material facts, from *Snethen v. Harrison County,* 172 Iowa 81. To like effect is *Armstrong v. Harrison County,* (Iowa) 172 N. W. 953 (not officially reported); *Gibson v. Sioux County,* 183 Iowa 1006; *Cunningham v. Adair County,* 190 Iowa 913. Furthermore, it is not made to appear in the present case that the bridge which was washed away was a county bridge, within the rule of county liability. All that appears is that it was a 16-foot bridge over a dry run. It was a county bridge only in the sense that it was built by the county, and so built upon a county road. It was not a county bridge

within the rule of county liability, as fixed by our early decisions. In *Armstrong v. Harrison County,* supra, we held that that rule of liability was not extended to smaller bridges by the later legislation which imposed upon the board of supervisors the duty to construct such smaller bridges.

In the *Snethen* case, though the negligence of the public officials was assumed in the opinion, yet it was held therein that the negligence did not pertain to the construction, maintenance, or repair of a county bridge, within the meaning of the rule of liability; and the plaintiff was nonsuited. The holding there is quite conclusive here, and we have no occasion to deal with other features of the appeal. The judgment below is, accordingly,— *Affirmed.*

WEAVER, PRESTON, and DE GRAFF, JJ., concur.