FRED POST, Appellee, v. DAVIS COUNTY, Appellant.

**COUNTIES:** Torts—Negligence of Public Officers. Counties are not liable for damages consequent on the neglect of their public officials to maintain bridges; and this is true notwithstanding the fact that, at a time when a contrary rule prevailed, certain precautionary clauses recognizing such contrary rule were inserted in divers statutes, *and have not been repealed.*

WEAVER, J., dissents.                                    ·

*Appeal from Jefferson District Court.*—C. W. VERMILION, Judge.

DECEMBER 15, 1922.

SUPPLEMENTAL OPINION JUNE 22, 1923.

ACTION for damages against the defendant county for personal injuries resulting from a defective county bridge. There was a verdict for the plaintiff, and judgment thereon. The defendant appeals.—*Reversed.*

*Buell McCash,* County Attorney, *T. A. Goodson,* and *J. P. Starr,* for appellant.

*Howell, Elgin & Howell* and *Thoma & Thoma,* for appellee.

EVANS, J.—I. The plaintiff was injured on August 10, 1919, as a result of a runaway of his team, caused by a defective bridge which he was crossing. The plaintiff alleged that the bridge in question was, at the time of its construction, a county bridge, within the meaning of the law, and he introduced evidence tending to support such allegation. Such evidence tended to· show that the bridge was constructed about 20 or 25 years ago. The defendant denies vigorously that such bridge was a county bridge, within the meaning of the law of liability for damages heretofore obtaining. Much of the record and argument is devoted to that issue. We are disposed to spend no time upon that question, and to assume the correctness of plaintiff's position in that regard, for the purpose of this appeal.

The law of liability upon which the plaintiff relies is that which had its first promulgation in *Wilson v. Jefferson County,* 13' Iowa 181, which precedent has been followed at all times since, though with more or less protest as to its soundness. That decision was made to rest upon the power conferred and duty imposed by the then existing statute upon the board of supervisors to build and maintain the necessary bridges in their respective counties. The power thus conferred upon the board of supervisors was broad and unqualified, and it was held that such power imposed a corresponding obligation or duty to exercise the same, and that a failure to exercise it rendered the county liable for all damages resulting from such failure. Within the range of the power thus conferred by the statute, the board was supreme, and was not subject in its action to any higher or directing authority. It was held, therefore, that liability of the county for the failure of the board to exercise its prerogative and to perform its duties was a necessary consequence. That the conclusion thus reached was not sound in principle has been the general consensus of opinion of the court in its changing membership for the succeeding 50 years, during which it nevertheless followed the case as a precedent. Some of the declarations of this court in subsequent cases, setting forth the unsoundness in principle of the precedent, will be quoted in a separate division hereof. Because of this continuing attitude of the mind of the court toward the precedent thus established, its authority has been confined to the narrowest limits. The result is that this court, in obedience to the precedent, has sustained the rule of liability of the county for damages resulting from a defective *county bridge,* and has constantly refused to apply the rule or argument to any other subject-matter within the field of power and duty of the same officials. *Kincaid v. Hardin County,* 53 Iowa 430; *Lindley v. Polk County,* 84 Iowa 308; *Wood v. Boone County,* 153 Iowa 92, 100.

In the *Kincaid* case, this court refused to extend the authority of the precedent to a case involving the defective construction of a courthouse. In the *Lindley* case, it refused to extend it to a case of wrongful confinement of a prisoner in an unsanitary jail. In the *Wood* case, it refused to extend it to a case of negligence of duty in supporting the poor.

Though the statute (Section 312, Revision of 1860) in force at the time the precedent was established, imposed upon the board the duty of erecting and maintaining "all bridges" which were necessary to the public convenience, this court has consistently refused to extend the authority of the precedent to any case other than such as involved a county bridge. The statutes which defined the scope of authority and duty of the board of supervisors in respect to public highways were not materially changed from the time of the rendering of the decision in the *Wilson* case until the year 1913. The latter year marks the beginning of a new era in road legislation in this state. The new legislation thus inaugurated has circumscribed and qualified to a considerable extent the power of the board of supervisors in relation to roads, including bridges, and has subjected the board to the supervision and direction of higher authority. The question confronting us now is whether the new legislation has so undermined the ground upon which the *Wilson* decision was made to rest that the decision itself has thereby ceased to be authority as a precedent. We have not heretofore had occasion to consider the question in this form. Our first contact with the new legislation was in *Snethen v. Harrison County*, 172 Iowa 81. In that case, the point was made for the plaintiff that the effect of the new legislation was to extend the field of liability of the county for damages for all defective road improvement work done by the board of supervisors under the power of the statute. The argument was that, under the decision in the *Wilson* case, the field of the liability of the county was as broad as the field of the duty of the supervisors, and that such case became, therefore, a binding precedent upon the court for recognition of damages for delinquencies of duty other than those pertaining to a county bridge. We refused to extend the authority to the *Wilson* case as a precedent in any degree. This refusal was based largely upon the ground that the *Wilson* case was unsound in principle, and therefore incapable of general application; that the rule of liability created by it was an exception to the general rule of nonliability of counties for the negligence of their officials; and that such exception would not be enlarged beyond its original application to county bridges. This holding was reaffirmed by us in *Gibson v. Sioux County*,

183 Iowa 1006; *Cunningham v. Adair County*, 190 Iowa 913; *Smith v. Jones County*, 190 Iowa 1041.

None of these later cases here cited involve the question of liability for a defective county bridge. We have had no occasion, therefore, to consider the question of what effect our later legislation has had upon that question. We guarded the question against any prejudgment in our discussion, but we had no occasion to pass affirmatively thereon. The question is now distinctly before us. Under the present state of our legislation, can it be said that the general rule of nonliability of counties for damages for the negligence of its officials is subject to the exception created by the holding in the *Wilson* case? In other words, has the authority of the *Wilson* case as a precedent been superseded as a result of our recent legislation which subordinates the powers and duties of the board of supervisors to the direction and supervision of higher authority?

The general purport of the new highway legislation is to unify the development and improvement of the highways of the state into one general and consistent scheme. This scheme contemplates a division of the burden, as between county and township and state and Federal government. The supreme administrative authority is retained by the state, and is exercised through its duly appointed officials, the state highway commission. The local administrative authority is vested largely in the board of supervisors, and to some extent in the township trustees. All acts of the board of supervisors are submitted to the advance approval of the highway commission. While power is conferred upon the boards to build bridges in their respective counties, yet this power is subordinated to the supervision of the highway commission, and must be exercised pursuant to plans and specifications furnished by such commission. The roads of a county are classified as primary and secondary, and as county and township. But the supreme authority in the classification is the highway commission of the state, and not the board of supervisors. This classification is adopted for the purpose of establishing respective priorities in the development of the roads and in the expenditure of the public funds, and for the purpose also of acquiring uniformity and connection of highways as between adjoining counties. The duties cast upon

the board of supervisors are to construct all bridges and all permanent culverts within its county, whether upon county road or upon township road. The designation of a road as a county road has no other significance than that the improvement of such road will take priority in time over that of a township road. This priority, however, does not wholly exclude improvement ·upon township roads nor necessarily delay the building of necessary bridges upon township roads. When built, they are so built by the board of supervisors, subject to the supervision of the highway commission. Under the new scheme, therefore, there is a sense wherein *all* bridges and permanent culverts in the county, whether on county or township roads, are county bridges. In a sense, also, there are *no* county bridges, within the meaning of the law as it was prior to 1913. In other words, it may be said with equal plausibility that *all* bridges are county bridges under the new law, and that *none* are county bridges within the meaning of the law as it was. Under the law as it was, a county bridge was defined as such in contradistinction to a township bridge. Under the present law, there are no township bridges; hence, there are no county bridges, except as all bridges are such.

It is, of course, impracticable for us to incorporate in this opinion the substance of the present road law. But we can set forth a few sections thereof, sufficient to indicate the general character of the limitations put upon the authority of the board of supervisors. The state highway commission was a creation of the new legislation. Its duties are set forth in Section 1527-s2, Supplemental Supplement, 1915, in eight paragraphs, some of which we set forth, as follows:

"Sec. 1527-s2. The duties of said commission shall be:

"1. To devise and adopt plans of highway construction and maintenance suited to the needs of the different counties of the state, and furnish standard plans to the counties in accordance therewith.

"2. To disseminate information and instruction to county supervisors and other highway officers, answer inquiries and advise such supervisors and officers on questions pertaining to highway improvements, construction and maintenance and of reasonable prices for materials and construction. * * *

"5. To make investigation as to conditions in any county, and to report any violation of duty, either of commission or omission, to the attorney-general, who shall take such steps as are deemed advisable by him to correct the same.

"6. The state highway commission shall have general supervision of the various county and township officers named in this act in the performance of the duties here enjoined, and shall have full power and authority to enforce the provisions of this act."

The duties of the board of supervisors are set forth in part in Section 1527-s8 of the Supplemental Supplement, as follows:

"The survey and report of each section, as soon as completed and approved by the board of supervisors, shall be submitted to the state highway commission, and the board of supervisors may designate to the said commission what sections, in their estimation, should be first passed upon by said state highway commission. The said commission is hereby charged with the duty of passing upon such reports and plans, and in so doing, shall take into consideration the thoroughness, feasibility and practicability of such plans, and may approve or modify the same. After such survey and plan for each section is passed upon by the state highway commission, they shall be returned to the county auditor with full and explicit directions as to modifications, if there be any. The county auditor shall, upon receipt of the approved and modified survey and plans, record the same at length in a county road book, and the board of supervisors shall thereupon proceed to the construction of the road, bridge, tile and culvert work in accordance therewith, and as herein provided. The duty to construct and maintain all bridges and permanent culverts throughout the county is imposed upon the board of supervisors. All culverts and bridges shall be paid for out of the county bridge fund, except as provided in Section 13 of this act. Where conditions are such as to warrant or necessitate the same, the board of supervisors shall furnish township trustees metal or other temporary culverts authorized by the state highway commission to be placed by them on their township road system. Said culverts to be purchased by the board of supervisors and paid for out of the county bridge fund and shall not exceed in size 36 inches in diameter, or its equivalent."

Under Chapter 249, Acts of the Thirty-seventh General Assembly, the legislation purports to accept the proposals of a certain act of Congress whereby the United States government proposes to aid in the development of highways within the states, subject to specified conditions. This chapter constitutes the state highway commission the representative of the state in contracting, so to speak, with the Federal government for Federal aid. The result is that the expense of the road development is distributed, as between township and county and state and Federal government. But this distribution operates to restrict the power and discretion of local officials. Not only is the board of supervisors subject to the supervision of state officials, but it is also subject to the regulations of the Federal government, as a condition to Federal aid. The net effect of the legislation, therefore, is that the improvement of the principal roads of a county, including the building of its bridges and its permanent culverts, is accomplished through the joint action and expenditure by the county and state and Federal government through the agencies representing these respective political entities. Those of the county are made subordinate to the other two.

If we are correct in our foregoing analysis of the present legislation, then the ground upon which the decision of the *Wilson* case is predicated has been radically qualified. The board of supervisors is not solely responsible for the proper construction or maintenance of the bridges of the county. Responsibility therefor has been divided, and authority has been graded into superior and inferior rank. The field of action of the board has been enlarged so as to include all bridges and substantially all improvements upon the principal roads, but the nature and extent of its power and authority have been reduced and subordinated to superior authority. It cannot adopt a plan or let a contract for any considerable improvement except under the permission or approval of the superior authority. What is the effect of such a change upon the authority of the *Wilson* case as a precedent? Under present legislation, we must hold either that all bridges are county bridges, within the meaning of the previous law, or that none are. If we hold the former, then the liability of the county has been greatly enlarged, while the power or authority of its board of supervisors has been greatly re-

strained. There is no logical distinction of liability for bridge accidents that can be made as between one bridge and another, or as between bridges and other road improvements constructed by the county. We can no longer say that the county is liable for negligence in the construction or maintenance of a county bridge and not liable for such negligence in relation to any other bridge or class of bridges. There *is* no other bridge. There would be no logical ground for our saying that the county is not liable for negligence in the construction or maintenance of road improvements other than bridges, constructed by the board under the mandate of the statute. This is the position to which we should be driven by mere force of logic, if we hold the *Wilson* case to be still a controlling precedent. This is quite the natural consequence of an attempt to follow a precedent unsound in principle. The court is driven thereby ultimately either to absurd result or to artificial and strained distinctions. In some such way the *Wilson* case has been held at bay for 50 years. We have said: "Thus far and no farther." The reasons given for the limitations thus put upon it are themselves subject to query as to their logical soundness. This is the result of attempting to follow an unsound precedent and yet to avoid its ultimate logic. *Reductio ad absurdum* is inevitable, sooner or later. We have quite reached that point in the application of the *Wilson* case, if we are still to regard it as controlling. If we hold that, under the present law, all bridges are county bridges, within the meaning of the previous law, we should deem it our duty to overrule the *Wilson* case.

On the other hand, if we hold that, under the present law, none of the bridges are county bridges, within the meaning of the previous law, then the *Wilson* case ceases to be controlling or applicable. The term "county bridge," as used in the previous law, implied a class, and a distinction between it and any other class of bridges. The other class was the township bridge.

The original function of the definition was to preserve the distinction between two classes of bridges. The definition and the classification originated in the *Wilson* decision. Two classes no longer exist. All bridges are built by the board of supervisors. The term "county bridge," therefore, has lost its significance as descriptive of a class. The proposition, therefore,

that all bridges are county bridges and the counter proposition that none are, are reducible to the same thing. No further classification as "county bridges" is possible, nor can any logical distinction be made in the responsibility of the county as for the safe construction and maintenance of a bridge, and for the safe construction and maintenance of a culvert, or of an embankment or fill, or for the safety of the ditches which flank the highway through every hill which has been penetrated by the levels of the engineer. And though it be said that these bridges are built by the board of supervisors, as provided by the statute, it must also be said that they are so built pursuant to divided responsibility and to legal authority which is subordinate to the superior authority of the highway commission.

Whether we say, therefore, that the *Wilson* case must be overruled because we are unable to follow it to its logical consequence without overturning principles which have been universally recognized as fundamental, or whether we say that the new legislation has undermined the reason upon which the *Wilson* decision was predicated, and has rendered obsolete its distinctive terminology which set a limit upon the scope of its operation, the result is the same. We are prepared to declare either or both. Upon either declaration, it follows that, under the new legislation, we can no longer follow the *Wilson* case as a controlling precedent.

II. The question remains, independent of the original precedent made by the *Wilson* case: What, on principle, is the correct rule of liability or nonliability of a county for the negligence of its public officials in the performance of statutory duties? Independent of the authority of the *Wilson* case as a precedent, can we say that the county is liable for damages for such negligence? There is little occasion for our indulging here in original argument on that question. In its repeated concessions of the unsoundness of the principle adopted in the reasoning of the *Wilson* case, this court has expressed itself unequivocally in favor of the rule of nonliability in such cases, and we shall content ourselves at this time with somewhat copious quotations from the previous utterances of this court on that question. A county is a political organization, and is merely a part of the organization of the state. There is no more

reason or legal principle for holding the county liable for damages for negligence of its officials than for holding the state liable for such damages for negligence of its officials. No one has ever contended that the state could be liable under such circumstances.

In *Soper v. Henry County*, 26 Iowa 264, this court, by Chief Justice Dillon, commented upon the decision in the *Wilson* case as follows:

"Counties are involuntary political or civil divisions of the state, created by general statutes, to aid in the administration of government. They are essentially public in their character and purposes. They are simply governmental auxiliaries, created bodies corporate 'for civil and political purposes only.' Rev. Section 221. To the statute they owe their creation, and the statute confers upon them all the powers which they possess, prescribes all the duties which they owe, and imposes all the liabilities to which they are subject. To enable them the better to exercise their powers and discharge their duties, our statute clothes them with corporate capacity. Considered with respect to their powers, duties, and liabilities, they stand low down in the scale or grade of corporate existences. It is for this reason that they are ranked among what have been styled quasi corporations. This designation is employed to distinguish them from private corporations aggregate, and from municipal corporations proper, such as cities, acting under general or special charters, more amply endowed with corporate life and functions, conferred in general at the request of the inhabitants of the municipality for their peculiar and special advantage and convenience. The decisions of the courts in every state of the Union, recognizing this distinction, hold incorporated cities and towns to a much more extended liability than they do counties, school and road districts, even where the latter are declared to be invested with corporate capacity. Thus, incorporated cities and towns, wherever they are invested by their organic or constituent acts with general supervision and control over their streets, with power to grade and to improve them, and with the power to levy taxes or raise revenue, which may be used for the purposes of such repair, are held liable, without any statute expressly giving the action, for injuries caused by unsafe and

defective streets. * * * [citing authority]. On the other hand, the decisions are almost (though not wholly) uniform to the effect that counties and other quasi corporations are not liable to private actions for the neglect of their officers in respect to highways, unless the statute has in so many words created the liability, specially giving the action to the party injured [citing authority] * * * The opinion of the court is that the court below rightly held that the county was not liable to the plaintiff in respect of the injury for which his action was brought. If the county ought to be liable in such a case, the remedy must be sought from the legislature.''

In *Kincaid v. Hardin County*, 53 Iowa 430, this court, by Justice Rothrock, said:

''But as the line of decisions in this state as to the liability for defective bridges stand almost, if not quite, alone, as we have seen, we have no disposition to carry the doctrine further than is necessary to sustain the decisions of the court, which have stood so long that it may truthfully be said they have the implied sanction of the lawmaking power and the people of the state. *Krause v. Davis County*, 44 Iowa 141.''

In *Packard v. Voltz*, 94 Iowa 277, this court, by Justice Granger, said:

''The work done on the highway was in pursuance of this provision, and we are to determine whether or not, in the doing of such work, the county is liable for the negligence of its agents or employees. We think the holdings of this court, upon analogous facts, are decisive of the question. But for the rule announced in *Wilson v. Jefferson County*, 13 Iowa 181, and the cases adhering to it, the one now contended for would have no authoritative support in this state. The rule of that case has been doubted, and the doubt, on common-law authority, has recognition in the holding of this court. In *Kincaid v. Hardin County*, 53 Iowa 430, speaking of that case, and of its standing 'almost, if not quite, alone,' support is given to the holding because of its existence for so long a time as to 'have the implied sanction of the lawmaking power and the people of the state;' and it is there said that 'we have no disposition to carry the doctrine further than to sustain the decisions of the court.' The case of *Green v. Harrison County*, 61 Iowa 311, was to recover

damages because of the negligent construction of a ditch by the county, resulting in damage to plaintiff. The case distinguishes the *Kincaid* case from the line of bridge cases, and follows it. The *Green* case is quite significant as authority in this case because of its application, being peculiarly local, which is a reason urged in this case to distinguish it from the rule of the *Kincaid* case, where the duty performed was the construction of a courthouse, and importance was attached to the mandatory character of the duty on the part of the board of supervisors.''

In *Wilson v. Wapello County*, 129 Iowa 77, the court, by Justice Bishop, said:

''It may be here remarked that, even in bridge cases, the rule in force in this state is opposed to the weight of common-law authority, and we have persistently refused to extend the operation of such rule beyond that class of cases which involve in all strictness a claim for damages arising out of defective bridge construction or want of repair amounting to negligence.''

In *Snethen v. Harrison County*, 172 Iowa 81, 87, by Chief Justice Deemer, we said:

''The demurrer challenges the liability of the county under this state of facts, and it is frankly conceded that, unless our new road law imposes liability upon the county, either expressly or by fair implication, there can be no recovery. Counties, unlike cities and incorporated towns, are not, as a rule, held liable for torts committed by them, so long as they are acting within the scope of their governmental powers. They are quasi municipal corporations, engaged in the performance of governmental functions, and are not responsible for the neglect of duties enjoined upon them, in the absence of statute giving a right of action. *Kincaid v. Hardin County*, 53 Iowa 430; *Wilson v. Jefferson County*, 13 Iowa 181; *Wilson v. Wapello County*, 129 Iowa 77; *Green v. Harrison County*, 61 Iowa 311; *Packard v. Voltz*, 94 Iowa 277; *Wenck v. Carroll County*, 140 Iowa 558; *Wood v. Boone County*, 153 Iowa 92; *Soper v. Henry County*, 26 Iowa 264. * * * The new road law (Chapter 122 of the Acts of the Thirty-fifth General Assembly) authorizes and requires counties to establish county roads, and requires them to construct these roads and to erect the necessary bridges and culverts according to approved plans. The defendant county was

in the exercise of its powers upon the road in question, and it must be assumed that its board or employees, or both, were extremely negligent in leaving the dangerous place in the road. But they had not· constructed a bridge at the point of the accident, so plaintiff's intestate was not injured by reason of a defective bridge. True, the board was bound to· construct a bridge at the place where the accident occurred, and was given a fund with which to do it and to keep the structure in repair. It was also authorized to construct the road, and doubtless to keep it in repair. But there is nothing in the statute anywhere which indicates any intention on the part of the legislature to impose any liability upon the county for negligence on its part in the doing of its work. Appellant contends, however, that the county should be held liable on the same theory that it is responsible for the construction, maintenance, and repair of county bridges; and it must be confessed that the analogy is quite close. But this court, in adopting the rule of liability for defective bridges, did not follow the general rule then existing in other jurisdictions, and has, since its adoption, persistently and consistently refused to enlarge the same. See cases hitherto cited. It has refused to apply it to county jails and courthouses, to ditches and drains constructed by legislative authority, and to the care of paupers and insane; and it may well be affirmed that county bridges constitute the only exception in this state to the rule of nonliability.''

In our later cases of *Gibson v. Sioux County*, 183 Iowa 1006, *Cunningham v. Adair County*, 190 Iowa 913, and *Smith v. Jones County*, 190 Iowa 1041, these previous pronouncements of the court were all expressly approved.

We shall not enter upon citations of authority from other jurisdictions, further than to refer to *Board of Commissioners v. Allman*, 142 Ind. 573 (39 L. R. A. 58). In that case, the Supreme Court of Indiana overruled its previous decision which it had followed for many years, and which held forth the same rule of liability as was held in our *Wilson* case. The line of precedents thus established was overruled by the Indiana court for the same reasons, or some of them, which are set forth herein.

Without further argument on this question, we return to

the fundamental principle of nonliability of the county, in the absence of legislation creating liability.

In this era of road improvement, millions of dollars are being expended in the respective counties of the state. The enterprise is not commercial; it pays no dividends; it collects no tolls. The benefits accruing are extended freely to all comers, without money or price. Behind the county in its public service is the taxpayer, who must respond to the public expenditure. If, in addition to this burden, it be the public policy that he must carry the hazard of the road which his tax payments have built, and that he must protect the traffic and travel thereon against the hazard of negligence, and must defend the issue on every claim predicated upon the alleged negligence of public officials, then clearly such policy should be declared, and the extent of the liability and the limitations thereon should be definitely promulgated by legislative action.

III.    Criticism by the appellee is directed against a particular remark contained in the opinion in the *Cunningham* case, 190 Iowa 913, and on page 916 thereof, as follows: "And this means a 40-foot bridge." It is urged that the statement is erroneous, and perhaps inadvertent, and, in any event, is mere dictum. The point thus made is well taken. The statement *is* dictum and *was* inadvertent. If it were otherwise, it is not material in this case, in view of our foregoing holding; but we take this occasion to acknowledge the error and to make the correction, so as to avoid future misunderstanding thereon. The writer hereof is responsible for the error.

IV.    We reach the conclusion that, for the reasons indicated in the first and second divisions hereof, the defendant's motion for a directed verdict should have been sustained. The judgment below is, accordingly, reversed.—*Reversed.*

STEVENS, C. J., PRESTON, ARTHUR, FAVILLE, and DE GRAFF, JJ., concur.

WEAVER, J., dissents.

## SUPPLEMENTAL OPINION.

EVANS, J.—On petition for rehearing, very strenuous complaint is made by the petitioner upon that feature of our

opinion which assumes "absence of legislation creating liability," and which holds it to be the function of the legislature to declare the "extent of the liability and the limitations thereof," and that the same "should be definitely promulgated by legislative action." The point strenuously made, with apparent sincerity, is that existing sections of the statute *do* create just such liability, and that we must have overlooked the same. The particular sections brought to our attention are Section 1557, Code, 1897, Section 3447, Subdivision 1, Code, 1897, and Section 424, Code Supplement, 1913.

I. The first of these, Section 1557, Code, 1897, provides the duties of a road supervisor with reference to obstructing bridges and notifying the board of supervisors. Its concluding sentence is:

"Any person who shall remove such obstruction shall be liable for all damages occurring to any person resulting therefrom, *but nothing herein contained shall be construed to relieve the county from liability for the defects of said bridge.*"

We italicize that part thereof which is relied on.

This is a formal saving clause, which has its equivalent in many statutes. Its function is purely precautionary and negative. It purports to add nothing to the law and to take nothing away therefrom. It did not purport to deal with the question of county liability. It was a mere negation on that subject. It purported only to recognize existing law on the subject. Under existing law at the time of its enactment, counties were liable for defects in county bridges. Such liability, however, was not created by the cited statute nor by any previous statute. The existing law was judge-made, and declared a common-law liability which was predicated upon the powers and duties conferred exclusively upon the board of supervisors in the building and maintenance of county bridges. We now hold that the reason for the former holding has disappeared, and that there is no longer a common-law liability. This does not prevent the creation of a statutory liability. Needless to say that the cited section does not purport to create such statutory liability.

II. Section 3447 comprises the statute of limitations. Under existing law, when it was enacted, counties were liable for defects in county bridges. The statute of limitations was

made applicable to causes of action against the county for personal injuries in precisely the same manner as to other municipalities for defective streets and sidewalks. Indeed, it was made applicable even to injuries suffered on account of "defective roads," as well as defective bridges, even though there was no liability upon the county for a defective road, either by statute or by common law. What we have already said as to Section 1557 is equally applicable here.

III. Section 424, Code Supplement, 1913, is a section of many subdivisions. It conferred power upon border counties to construct bridges across streams forming the state boundary and to join in such construction with a contiguous county or state. Subdivision d of such section is as follows:

"Sec. 424-d. The county shall not be liable for negligence in the maintenance of such bridge *except for that part which it shall undertake to exclusively maintain,* and where there is a contract for joint maintenance of the entire structure, it shall only be liable for that part or portion which is within the boundary lines of the state of Iowa."

It will be noted that this is also a precautionary saving clause, and is the equivalent of the like clause in Section 1557 already considered.

Counsel lays extreme emphasis upon the final clause of the foregoing section:

"It shall only be liable for that part or portion which is within the boundary lines of the state of Iowa."

The contention is that this is an affirmative declaration of liability. Construed as a whole, the section does not bear the emphasis thus put upon this part thereof. The liability referred to in such final clause is the contractual liability for joint maintenance, and nothing else. Sufficient to say that none of the statutory clauses thus pointed out and relied on by the appellee can be deemed to create or to attempt to create statutory liability for damages against the county on account of defective roads or bridges.

The petition for rehearing is, accordingly, overruled.

PRESTON, C. J., STEVENS, ARTHUR, FAVILLE, and DE GRAFF, JJ., concur.