STATE OF IOWA, Appellee, v. M. V. HENDERSON, Appellant.

No. 41703.

DECEMBER 12, 1933.

W. H. Antes, and H. E. Narey, for appellant.

Edward L. O'Connor, Attorney-general, Guy P. Linville and Leon R. Layton, Special Prosecutors, for appellee.

MITCHELL, J.—The appellant was indicted by the grand jury of Fayette county at the September, 1927, term, under the provisions

of Code, sections 9279 and 9280. This was prior to the amendment by the Forty-third General Assembly (chapter 30, section 30), adding to said sections the elements of intent to defraud and financial benefit. The indictment accused appellant of unlawfully accepting a deposit from a depositor of the bank, one H. J. Belschner, on the 7th day of April, 1927, stating that he was the active cashier of said bank, First State Bank of Hawkeye, Iowa, at said time; that the bank was a corporation organized under the laws of the state of Iowa and engaged in the business of banking in the town of Hawkeye, which is in Fayette county, Iowa; that on the 7th day of April, 1927, said bank was insolvent; and that the appellant, Henderson, knew said bank was insolvent at the time he accepted said deposit. The First State Bank of Hawkeye was originally a private bank, in the nature of a partnership, but in 1894 the bank was incorporated under the name of "First State Bank of Hawkeye". The charter was renewed some time in 1914, and the bank continued as a corporation until it closed April 7, 1927. The appellant, Henderson, had worked in the bank as an errand boy and janitor, and eventually became cashier and continued as such up until the time the bank closed, except for a year or so when he was in Des Moines, and during which time the president of the bank was in active charge of the affairs of the bank. The cause proceeded to trial. Evidence was introduced both by the state and the appellant, and the case submitted to the jury on instructions by the court. The jury returned a verdict of guilty as charged in the indictment. Motion for new trial and exceptions to the instructions was filed by the appellant, which was overruled by the lower court, and the appellant was sentenced in accordance with the law. From the ruling of the court on the motion for new trial, and exception to instructions and errors assigned at the time of the trial, the appellant has appealed to this court.

The appellant has raised a great many assignments of errors. This court will give consideration at this time to only one of the errors assigned. The court in his instructions to the jury gave what is known as instruction No. 20, which is as follows:

"You have the right to consider the opinions of such witnesses, and in construing evidence of the different witnesses as to their estimates of opinions of value, you should consider the fairness and reasonableness of their judgment and estimates in connection

with all the evidence tending to establish the true, reasonable value. You have the right to use your knowledge of values and of affairs generally in connection with the testimony as to values which have been given by the different witnesses. By this is meant that you are not obliged to rely wholly upon the opinions of the witnesses as to such values, but that in connection with such values you may use and be guided by your own judgment in such matters."

To this instruction the appellant objected upon the ground, among others, that the instruction is in violation of the rights of the appellant afforded under the Constitution of Iowa (Article I, section 10), depriving him of an opportunity to cross-examine and confront the person testifying as to any material matter in the case. It should be noted in the beginning that the instruction which was given in the case at bar was the identical instruction that was given in the case of State v. Bevins, 210 Iowa 1031, 230 N. W. 865. The court has inspected the record in the case of State v. Bevins, and finds that the objection which is here raised to instruction 20, to wit: the fact that the instruction violates section 10 of Article I of the Constitution of Iowa, was not raised in the case of State v. Bevins, and this court, as the question was not raised, did not give consideration to this objection in that case. We find also that the same identical instruction, word for word, as instruction 20 in the case at bar, was given by the court in the case of State v. Brown, reported in 215 Iowa 600, 246 N. W. 258. This court said at page 605:

"Objection was lodged against this instruction which is seriously argued on this submission. This instruction was approved in State v. Bevins, 210 Iowa 1031, 230 N. W. 865, but the assault now made against it was not urged against it in the Bevins case.

"Under proper circumstances, an instruction on this subject may be given to the jury, but in no case, however, should the jury be instructed that their knowledge may be considered as evidence or a substitute for evidence. The only use that the jury can make of their knowledge of values is in passing on the weight of expert as well as other testimony."

Article I, section 10, of the Constitution of Iowa, is as follows:

"Rights of Persons Accused. In all criminal prosecutions, and in cases involving the life, or liberty of an individual the accused

shall have a right to a speedy and public trial by an impartial jury; to be informed of the accusation against him, to have a copy of the same when demanded; to be confronted with the witnesses against him; to have compulsory process for his witnesses; and, to have the assistance of counsel."

It is the claim of the appellant that instruction 20 deprived him of his constitutional right to be confronted with the witnesses against him, and that means his right to cross-examine the witnesses on whose judgment of values he was found guilty. If the instruction complained of merely related to the matter determining what weight, if any, the jurors should give to the testimony of witnesses on value, there could be no complaint to said instruction. However, instruction No. 20 goes much further than that. It said:

"You have the right to use your own knowledge of values and of affairs generally in connection with the testimony as to values which have been given by different witnesses."

This part of the instruction does not in any manner relate to weight to be given to the testimony of any witnesses. It is a positive statement of the court that the jury could use its own knowledge of values in connection with the testimony as to values which had been given by different witnesses. The complaint made by the appellant is that the instruction permitted a substitute of the knowledge of the jury for that of witnesses, and did not limit the right of the jury to use its own knowledge in determining the weight to be given the expert testimony. Under the instruction given it was a direct invitation to the jury to use its own judgment in determining the values of the properties involved in the case. This was making a witness of the juror and permitting him to testify without the defendant (appellant) being confronted by such witness. This court has held that a certificate of protest of a notary public on a check is not admissible in evidence against a defendant, to prove the allegation of an indictment that the defendant had no money on deposit in the bank.

In the case of State v. Reidel, 26 Iowa 430, at page 436, the court said:

"The material pretense alleged to be false, was that the defendant represented that he had funds on deposit in the First National bank at St. Paul. The falsity of this representation it was,

of course, incumbent on the State to establish,—that is, the State must lay before the jury such evidence, direct or circumstantial, as shall satisfy them that the defendant had no funds on deposit in the bank at St. Paul. Under the Constitution, he has the right to see the witnesses against him, face to face. Hence the State could not prove the non-existence of funds in the bank at St. Paul, by the deposition of any officer of the bank, nor could it prove this fact by showing the declarations of those officers. The dishonor of a bill or note may, in civil cases, be proved by the oral or written testimony of the notary, or other person who presented it. But the deposition of the notary could not be used against the defendant in a criminal prosecution; the Constitution forbids it. Dominges v. The State, 7 Smedes & M. [Miss.] 475 [45 Am. Dec. 315]; Farrington v. The State, 10 Ohio 354. Can the mere certificate of protest be thus used? It seems to us not."

In the case of State v. Collins, 32 Iowa 36, at pages 40, 41, this court said:

"The constitution of the State, which is paramount in authority over an act of the general assembly conflicting with it, provides that 'in all criminal prosecutions, and in cases involving the life or liberty of an individual, the accused shall have the right to a speedy public trial by an impartial jury; to be informed of the accusation against him; to have a copy of the same when demanded; *to be confronted with the witnesses against him;* to have compulsory process for his witnesses; and to have the assistance of counsel.' New Const., art. I, section 10.

"Here is a clear and express declaration of the *right* of the defendant 'in a criminal prosecution' 'to be confronted with the witnesses against him.' This right to have them brought into court, where he can see them, while they give evidence against him, is secured by this constitutional provision. Their testimony can be given only upon the trial of the cause, and face to face with the accused; and any act of the legislature purporting to authorize depositions of witnesses, taken out of court, to be used against a party on trial in a criminal case, would be in conflict with this section of the constitution, and, therefore, void. The minutes of evidence admitted in this case do not rise even to the dignity of a deposition; but, if they did, it would have been error to admit them

as original evidence, because incompetent in view of the above clause of the constitution."

Again, in the case of State v. Lugar, 115 Iowa 268, at page 270, 88 N. W. 333, 334, this court said:

"The constitution of this state guarantees to every man accused of crime the right to be confronted with the witnesses against him, and this would be but a barren right, and afford the defendant no protection, if such witnesses may testify without being sworn, or without in any way being subject to the penalties for perjury. The motion for a new trial should have been granted on this ground of the motion."

And in the case of State v. Grba, 196 Iowa 241, 194 N. W. 250, it is held that testimony as to what bloodhounds did was inadmissible for the reason that there was no opportunity to cross-examine the bloodhounds.

" 'The trailing of the hound, if evidence at all, must be upon the supposition that he took the track at the scene of the crime and followed it, but the defendant has no chance to inquire of the hound how far from the place did he really find the trail, or did he cross any other or find any others. If a person was testifying to having tracked the defendant from or about the place, he could be cross-examined upon that subject to know whether there was any other track, and which appeared to be the freshest, and size, and whether the trail he was following crossed or fell in with other trails. Not so with the dog. He has had his say and left.' [Page 260 of 196 Iowa, 194 N. W. 250, 258.] * * *

"The evidence is in the nature of expert testimony with no opportunity whatever to cross-examine the expert or to find out from any source any reason for the conduct of the dogs, or why they should choose one direction, or one trail, rather than another, as was done in the instant case.

"Notwithstanding that the majority of the courts of the country, especially in the southern states, have sustained the admissibility of evidence of this character, we are disposed to the view that the better reasoning requires that such evidence should be excluded, and we are inclined to ally ourselves with the Supreme Courts of Nebraska, Illinois, and Indiana in rejecting such evidence. The life and liberty of any citizen should not be placed in jeopardy or be

forfeited upon evidence of the conduct of a dog. The instant case furnishes an excellent sample of the inherent weakness of evidence of this character. [Page 262 of 196 Iowa, 194 N. W. 250, 259.] * * *

"We are constrained to hold that the trial court committed error in the admission of this evidence and in submitting this question to the jury, and for that error the judgment of the district court must be, and it is, reversed. [Page 263 of 196 Iowa, 194 N. W. 250, 259.]"

In the case at bar two very essential elements, in fact the necessary elements which the state had to prove, one the insolvency of the bank and the other the actual knowledge of the defendant of such insolvency, if it existed, involved the question of value of assets. These elements could not be determined without the determination of the value of the assets. The record, which is a lengthy one, shows that the assets of the bank consisted of various notes, of real estate mortgages, chattel mortgages, land, town property, including the bank building and bank fixtures. Many of the notes were secured by real estate mortgages, which necessarily involved the value of the real estate. Some of the signers of the notes lived in Fayette county; others lived in other counties. Some of the land was in Fayette county, part of it in other counties, and some of it in Dakota. Various witnesses were offered on both sides, who, after qualifying as experts, swore to the value of the assets. The appellant likewise testified as to what he considered the value of these various assets was. In instruction No. 20 the jury was told that it had a right to ignore the testimony of the witnesses, both for the state and for the defense, and had the right to use its own knowledge of values generally in connection with the testimony as to values given by the different witnesses. In these trying times, such as have existed in this state for several years, naturally the opinions of witnesses differ as to values upon all classes of property. If the state witnesses were believed by the jury in the case at bar, the bank, of which the appellant was the cashier, was insolvent on the date the appellant received the deposit. If the jury believed the witnesses offered by the appellant and the appellant's testimony, then the bank was solvent and the appellant committed no crime in that event. Suppose one of the jurors was of a pessimistic turn and did not believe that prosperity was just around the corner or that the new deal was going to work out, he could argue to the other members of the jury

that he knew all about the value of land in Fayette county, and that he knew all about the value of land in Dakota—for one of the important questions in this case is the value of the assets securing loans made upon Dakota property; this juror might have believed, as lots of people do believe—and honestly believe—that no land or property in Dakota has any value; he could argue to the other members of the jury that, from his own knowledge of values in connection with the testimony of witnesses as to values, certain paper and assets of the bank had no value. The court in the instruction did not tell the jurors that they had a right to use their own knowledge in determining which of the witnesses they would believe. What the court told them was that they "were not obliged to rely wholly upon the opinions of the witnesses as to values, but that in connection with such values they could use and be guided by their own judgment in such matters." If the jury as a body had a right to exercise its own judgment, then the individual juror had the right to use his individual judgment. If only one juror claimed to have knowledge of certain assets, he could act on his own knowledge, and he would have the right and power under the instruction to communicate his knowledge to the other members of the jury. It is quite true that the instruction does not tell the jury to ignore the testimony of any witness, but it does, without any question, say that it has the right to use its own knowledge, and that in connection with values it might use and be guided by its own judgment. The jury's judgment might be good or bad. It might be based upon adequate information or upon indigestion. The use by a juror of his own knowledge of value, the guidance of his own judgment—would deny to the appellant the protection of the Bill of Rights which says he must be confronted with the witnesses against him.

It was error on the part of the lower court to give instruction No. 20.

There are other matters raised by the appellant, but, as this case will have to go back for retrial, these other matters will not be given consideration at this time.

For the error pointed out, the judgment and verdict of the lower court must be, and it is hereby, reversed, and the cause remanded.

ALBERT, C. J., and EVANS, KINDIG, STEVENS, ANDERSON, DONEGAN, CLAUSSEN, and KINTZINGER, JJ., concur.